ROBERT CIOFFOLETTI ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF RIDGEFIELD (14329)

PETERS, C. J., SHEA, GLASS, COVELLO and BERDON, Js.

Argued October 1—decision released November 12, 1991

*Melvin J. Silverman,* for the appellants (plaintiffs).
*Thomas W. Beecher,* for the appellee (defendant).

SHEA, J. This appeal is the sequel to our decision in *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 552 A.2d 796 (1989) *(Cioffoletti I).* In our

order of remand, we instructed the trial court to conduct further proceedings related to whether the plaintiffs, Robert and Catherine Cioffoletti, had been deprived of their property rights unconstitutionally[1] by the refusal of the defendant, the planning and zoning commission of the town of Ridgefield,[2] to grant in its entirety their application for a permit to expand their sand and gravel mining activities. After the remand hearing, the trial court, *Karazin, J.*, again rendered judgment upholding the action of the commission, concluding that no taking without just compensation had occurred. In appealing from that judgment, the plaintiffs contest the court's conclusion as unsupported by the evidence and as involving a deviation from our mandate in *Cioffoletti I.* They also contend that the denial of a permit to excavate the entire area proposed in their application constitutes a taking as a matter of law, in view of the evidence of the financial benefits they are prevented from realizing and the minimal evidence of adverse effects upon the public interest. We affirm the judgment.

In *Cioffoletti I,* the trial court, *Moraghan, J.,* had upheld the decision of the commission, but had refused to admit evidence offered to the court by the plaintiffs of the economic impact of the partial denial of their permit application, thus limiting the evidentiary basis for determining their claim of a taking of property without due process of law to the record of the hearing before the defendant commission. We concluded that General Statutes 22a-43a (a)[3] contemplated "that the trial court should decide the taking issue de novo in the

---

[1] The plaintiffs do not cite but presumably rely upon article five of our federal constitution, which provides in part: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation."

[2] The planning and zoning commission of the town of Ridgefield also serves as its inland wetlands board.

[3] General Statutes § 22a-43a (a) provides: "If upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes

light of all the evidence properly presented to it, including, but not limited to, the administrative record." Id., 551. We also declared that the incorrect "evidentiary ruling has necessitated a remand for further proceedings related to [the taking] claim so that the trial court [could] make findings related thereto." Id., 562.

At the remand hearing, the plaintiffs were permitted to present their economic impact evidence as well as other testimony. Their expert witnesses testified that, if an excavation permit had been granted, as requested, for the entire ten acre tract, which consisted mostly of wetlands that included a 2.6 acre pond, the plaintiffs' property would have a value of $1,685,000, but that its value with the permit granted by the commission, limiting the excavation area to 4.6 acres, was only $760,000, a diminution in potential value of $925,000. Evidence was also presented that the plaintiffs had acquired the ten acre wetlands area as part of a twenty-four acre property purchased on October 15, 1982, for $260,000.

At the remand hearing it appeared that the plaintiffs had applied for a permit to remove no more than 200,000 cubic yards of sand and gravel from the ten acre wetlands tract over a period of ten years.[4] An engineer who testified for the plaintiffs at the remand hearing stated that his computations indicated that 175,000 cubic yards of gravel and 25,000 cubic yards of fill could be excavated from the 4.6 acres.

---

the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking. In both instances the court shall remand the order to the inland wetland agency for action not inconsistent with its decision."

[4] The plaintiffs' written application stated that they sought a permit for "[r]emoval of approximately 80,000 cubic yards of sand and gravel for use by the applicant." After a question was raised at the December 18, 1984 public hearing about this quantity as inconsistent with the depth and area of the proposed excavation, counsel for the plaintiffs reported that revised calculations indicated that the total volume of material to be removed from the ten acre site would be between 180,000 and 200,000 cubic yards.

Although it did not rely upon adverse effects of the proposed excavation upon the public, the trial court found that the record of the hearing before the commission was "full of reasons concerning the public interest and the advancement of the public interest." The memorandum of decision refers specifically to complaints about "traffic and noise problems at the mining site" and to the testimony of experts concerning the "adverse impact on the existing flood plain portions of the wetlands" from the proposed excavation and the "possibility of diminished water quality that might result if oil and gasoline used to operate the mining equipment were spilled and thereafter entered the ground water system." The court held it unnecessary, however, to decide whether these concerns outweighed the economic detriment suffered by the plaintiffs from the denial of permission to extract the maximum quantity of material from their property.

The trial court made two findings that it considered decisive: (1) the value of the plaintiffs' property had increased from $260,000, its purchase price on October 15, 1982, to $760,000 on April 10, 1985, the date of their expert's appraisal, as a result of the commission's approval of mining operations on the 4.6 acre parcel; and (2) the plaintiffs, under the permit granted, could remove approximately the same amount of material that they had declared to the commission they intended to remove if their application were granted in full. Relying upon these findings, the court concluded that "no taking ha[d] occurred without just compensation."

I

The plaintiffs claim that there is no competent evidence to support the trial court's finding that the value of their property had increased as a result of the commission's grant of a permit to excavate 4.6 acres of the

ten acre tract for which the application sought a permit. This contention is virtually frivolous because the testimony and report of their own expert witness amply support that finding. Using the capitalization of income approach to valuation, the plaintiffs' appraiser capitalized the projected net income that would be generated from the excavation of the 4.6 acre parcel and arrived at a value of $760,000 for the twenty-four acre tract on April 10, 1985, the appraisal date. That witness also testified that the property had been purchased on October 15, 1982, by the plaintiffs for $260,000. Because the valuation of $760,000 was based almost entirely on the capitalization of income from the excavation of the 4.6 acre parcel, it was not unreasonable for the court to infer that the increase of $500,000 since its purchase, two and one-half years previously, had resulted from the grant of a permit to excavate on that parcel. *Dotson* v. *Warden,* 175 Conn. 614, 616, 402 A.2d 790 (1978). There was no evidence of any factor other than the granting of the permit for the 4.6 acres that would account for this remarkable appreciation in land value during such a relatively brief period of time.

The plaintiffs have not attacked the evidentiary basis for the finding of the trial court that the permit granted by the commission allows the removal of approximately 200,000 cubic yards of material, approximately the same quantity that they stated at the hearing before the commission that they intended to excavate from the entire ten acre tract, if their application had been granted as proposed.

## II

The plaintiffs claim that the trial court departed from our remand order in *Cioffoletti I* by failing to set forth the facts they claim to have proved relating to the financial loss they have sustained from the denial of permis-

sion to excavate on the remaining 5.4 acres of the land described in the application. "It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning." *Nowell* v. *Nowell,* 163 Conn. 116, 121, 302 A.2d 260 (1972).

Our rescript in *Cioffoletti I,* supra, 563, set aside the judgment and remanded the case "for further proceedings in respect to the takings issue." We explained in the opinion that the trial court ruling excluding the evidence offered by the plaintiffs of the financial loss resulting from the denial of an excavation permit for 5.4 acres of their property "necessitated a remand for further proceedings related to that claim so that the trial court [could] make findings related" to that issue. Id., 562. We indicated that, in determining whether a taking had occurred, consideration should be given not only to "the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." Id., 562–63; *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 356, 362 A.2d 948 (1975). We also declared that "[a]t the further proceedings in the trial court that we have ordered, evidence may be admitted that is material to the taking issue both as it relates to the plaintiffs' financial detriment and as it relates to the advancement of the public interest." *Cioffoletti I,* supra, 563.

The plaintiffs make no claim that any evidence offered by them on the taking issue was excluded. Their claim that the findings made by the court are inadequate apparently relates to the absence of any statement in the memorandum of decision quantifying the plaintiffs' economic loss resulting from the refusal to grant their application fully. The court did refer to

the "conflicting views of the evaluation of the property" given by the real estate appraisers testifying for the parties, but considered it unnecessary to resolve this dispute because the plaintiffs under the permit as granted could excavate the same amount of material that they had declared to the commission they intended to excavate. For the same reason, the court never attempted to employ the balancing test of weighing the plaintiffs' financial loss against the public interest in accordance with the standard ordinarily used in addressing a taking issue.

Although this court in *Cioffoletti I* did refer to that standard, our mandate "for further proceedings in respect to the takings issue" was not so limited as to preclude other methods of resolving that issue. We have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. *Blaker* v. *Planning & Zoning Commission*, 219 Conn. 139, 592 A.2d 155 (1991). So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing. We conclude that the court did not exceed the scope of our remand by resolving the taking issue on grounds not mentioned in *Cioffoletti I*.

### III

Finally, the plaintiffs contend that the application of the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 through 22a-45, to their land constituted a taking because sand and gravel mining operations had been conducted there prior to zoning and were a nonconforming use. We agree with the trial court that no such taking claim can be based upon the action of the commission in granting permission to

excavate the same amount of material from the 4.6 acres as the plaintiffs had declared they intended to excavate from the entire ten acre tract. Under the permit as granted, they may remove approximately 200,000 cubic yards of material, an undertaking that will not be completed for several years according to the schedule the plaintiffs proposed to the commission.[5] Since the plaintiffs' taking claim is predicated solely on the economic benefit to be derived from mining the additional 5.4 acres, the fact that they are able to remove the same amount of material as they sought to remove at the time of the hearing greatly undercuts any claim of financial loss at the present time.

"It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *MacDonald, Sommer & Frates* v. *Yolo County,* 477 U.S. 340, 348, 106 S. Ct. 2561, 91 L. Ed. 2d 285 (1986). Because the plaintiffs have received under the permit as granted by the commission all of the economic benefit that they had indicated they were seeking, it is unclear whether the commission has made a final determination as to the extent of the mining operations that may ultimately be allowed on the plaintiffs' property. Whether or not the commission was aware of the consequences of its decision, its effect was to authorize the plaintiffs to remove as much material as they had requested.

Counsel for the commission does not maintain that the plaintiffs are forever barred by the commission's action from applying for permission to excavate additional material from the remaining 5.4 acres at some later time. As he suggests, it is conceivable that such

---

[5] The plaintiffs' permit application indicated that approximately ten years would be required to complete the proposed excavation of the ten acre tract.

an application might be granted. After the commission has had the opportunity to evaluate the ecological effects of the excavation to be conducted on the 4.6 acre tract, the plaintiffs will be in a better position to submit a new application to excavate on their remaining land. "Until a property owner has 'obtained a final decision regarding the application of the . . . regulations to its property,' 'it is impossible to tell whether the land retain[s] any reasonably beneficial use or whether [existing] expectation interests ha[ve] been destroyed.' " Id., 349, quoting *Williamson Planning Commission* v. *Hamilton Bank,* 473 U.S. 172, 186, 190 n.11, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985); *Gil* v. *Inland Wetlands & Watercourses Agency,* 219 Conn. 404, 415, 593 A.2d 1368 (1991); *Port Clinton Associates* v. *Board of Selectmen,* 217 Conn. 588, 600–602, 587 A.2d 126 (1991).

Furthermore, the opponents of the application, as well as the commission members, were entitled to rely on the representations of the plaintiffs about the quantity of material to be excavated from the wetlands area. The testimony at the public hearing, even that offered by the plaintiffs, might have been quite different if it had been known that the plaintiffs sought to remove a substantially greater amount of material than indicated by their application. Because the plaintiffs will have an opportunity to apply at the appropriate time for permission to excavate on their remaining land, they have failed to satisfy the requirement that the decision of the regulatory agency be *final,* so that a reviewing court may properly consider whether an unconstitutional taking of property without just compensation has occurred.

The judgment is affirmed.

In this opinion the other justices concurred.