[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 6, 1990, the plaintiff, Mattabassett Group, Inc., ("Mattabassett") filed this appeal pursuant to General Statutes 22a-43 and 4-183 from a decision of the defendant, Inland Wetlands Watercourses Agency of the City of Middletown ("Agency"), denying the plaintiff's application for a development permit. The plaintiff claims that the Agency acted illegally, arbitrarily, capriciously and in abuse of its discretion in denying the application because of numerous alleged procedural irregularities in the proceeding before the Agency and because the reasons given by the Agency for its denial were not supported by substantial evidence.
Mattabassett is the owner and developer of approximately 75 acres of property located east of Interstate 91, south of Route 72 and west of Route 217 in the City of Middletown. (Complaint, para. 1, see Return of Record ("ROR"), Application dated 3/23/90). Mattabassett's property includes 26.6 acres of wetlands. (Complaint, para. 2).
On August 23, 1990, Mattabassett filed a "City of Middletown Inland Wetlands and Watercourses Agency Application for Inland Wetlands and Watercourses Development," seeking to construct a bridge over the Mattabassett River, an access road through the property and an elevated garage, and to discharge storm water on its property. (ROR, Application dated 8/23/90). A public hearing on Mattabassett's application was held by the Agency on October 17, 1990 and November 7, 1990. (See ROR, October 17, 1990 Transcript and November 7, 1990 Transcript). On November 7, 1990, the Agency voted 5 to 4 to deny Mattabassett's application. (November 7, 1990 Transcript, p. 37).
On November 20, 1990, the Agency notified Mattabassett by certified mail that its application had been denied. (ROR, Letter dated November 20, 1990 from William Kuehn, Jr., to Michael Dowley, Mattabassett's attorney). On December 3, 1990, Mattabassett instituted this appeal by CT Page 2909 service upon the Agency and the State of Connecticut Commissioner of Environmental Protection.[1]
DISCUSSION
I. Jurisdictional Prerequisites
"Appeals to courts from administrative agencies exist only under statutory authority." (citations omitted.) Citizens Against Pollution, Northwest, Inc. v. Connecticut Siting Council, 217 Conn. 143, 152, 584 A.2d 1183 (1991). A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. Id.; see Chestnut Realty, Inc. v. Commission on Human Rights and Opportunities, 201 Conn. 350, 356,514 A.2d 749 (1986). "The statutory requirements are jurisdictional; if a party fails to abide by them, the appeal is subject to dismissal." Shapiro v. Carothers, 23 Conn. App. 188, 190,579 A.2d 583 (1990), citing Donis v. Board of Examiners in Podiatry, 207 Conn. 674, 683, 542 A.2d 726 (1988).
A. Timeliness
General Statutes 4-183(b) provides that a person appealing a final decision under section 4-183 shall serve a copy of the appeal on the agency that rendered the final decision within forty-five days after mailing or personal delivery of the final decision. As noted above, Mattabassett was notified of the Agency's decision by letter dated November 20, 1990 sent by certified mail. (ROR, Letter dated November 20, 1990). Mattabassett timely served the Agency and the Commissioner of Environmental Protection with this appeal on December 3, 1990, well within the forty-five day time limit of General Statutes 4-183(b).
B. Aggrievement
General Statutes 22a-43(a) provides that "any person aggrieved by any . . . decision made pursuant to sections22a-36 to 22a-45, inclusive, by the . . . municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any . . . decision . . . made pursuant to said sections may appeal to the superior court in accordance with the provisions of section 4-183. . . ." Aggrievement is a CT Page 2910 specific, personal and legal interest in the subject matter of the decision. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530, 525 A.2d (1987). An owner of the subject property is aggrieved and is entitled to take an appeal. Huck v. Inland Wetlands Watercourses Agency, supra; see Bossert Corp. v. Norwalk, 157 Conn. 279, 285,253 A.2d 39 (1968).
The court finds that Mattabassett is both the owner of the subject property and the applicant for the development permit (ROR, Application dated 8/23/90). Accordingly, the court finds that Mattabassett is an "aggrieved person" entitled to bring this appeal.
II. Scope of Review
In granting, denying or limiting any permit for a regulated activity the inland wetlands agency considers the factors set forth in General Statutes 22a-41. General Statutes 22a-42a(d). General Statutes 22a-41 provides:
 (a) in carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including, but not limited to:
 (1) The environmental impact of the proposed action;
 (2) The alternatives to the proposed action;
 (3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;
 (4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity; CT Page 2911
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and
 (6) The suitability or unsuitability of such activity to the area for which it is proposed.
 (b) In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefore shall be stated on the record.
"Appellate review of an agency's decision is of limited scope. The reviewing court does not make a broad de novo review of the record." Kaesar v. Conservation Commission, 20 Conn. App. 309, 311, 567 A.2d 383 (1989), citing Huck v. Inland Wetlands Watercourses Agency, supra, 541. The court does not redetermine factual issues or weigh the credibility of witnesses, as those matters are within the exclusive province of the agency. Kaesar v. Conservation Commission, supra, 540-42. The court is limited to a review of evidence and reasoning the agency has placed on the record. Kaesar v. Conservation Commission, supra.
The agency's decision must be sustained if an examination of the record discloses evidence that supports any of the reasons given for the decision. Huck v. Inland Wetlands Watercourses Agency, supra, 539-40. The evidence to support any such reason must be substantial. Id., 540. The plaintiff has the burden of proof in challenging the administrative action. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 718, 563 A.2d 1339
(1989).
III. Merits of the Plaintiff's Appeal
The Agency stated the following reason for its CT Page 2912 denial of Mattabassett's application:
 the need for a much larger setback at the Mattabassett River; the importance of the floodplain and wetlands as ranked in the Purcell report; belief that the floodplain soils result from backwater flooding as opposed to glacial till; the 100A garage would represent [sic] in a change in the hydraulics of the floodplain; the project represents an undesirable infringement on the wetlands system; and, the value of the floodplain forest within the project area.
(ROR, Letter dated November 20, 1990).
A. Procedural Irregularities
Mattabassett argues that the Agency's decision was illegal due to a number of procedural irregularities. Mattabassett contends that after the close of the public hearing, Commissioner Patton "testified" as an expert geologist, not as an expert soil scientist, in rebuttal to the testimony presented by Mattabassett's expert soil scientists. Mattabassett claims that "[b]ecause this testimony of a purported `expert' was presented in the Executive Session, plaintiff was stripped of its right to cross examine or give rebutting evidence." (Plaintiff's brief, p. 7). Mattabassett further asserts that Commissioner Patton's alleged testimony after the close of the public hearing resulted in bias on the part of his fellow commissioners and thus violated the requirement that the proceeding be conducted in a manner consistent with the requirements of fundamental fairness. Mattabassett also claims that the issue upon which Commissioner Patton testified is not one within the understanding and common experience of a lay person, but rather requires the technical expertise of a soil scientist.
Mattabassett maintains that Commissioner Patton was prejudiced to its application because of his incorrect belief that the soil under the proposed 100A garage was wetlands soil, and would have denied the application regardless of any argument or evidence that might have been advanced at the CT Page 2913 public hearing. Mattabassett further maintains that Commissioner Brooks exhibited her prejudice "by her undying attempt to qualify Commissioner Patton as an expert upon which the Commission could rely, in contravention of the two expert witnesses. The contents of the questions show that they were specifically designed to illicit [sic] a rebuttal of the expert witnesses with an unqualified witness." (Plaintiff's brief, p. 16).
"In all its proceedings, a regulatory agency must act strictly within its statutory authority, within constitutional limitations, and in a lawful manner." (Internal quotation marks omitted, citations omitted.) Huck v. Inland Wetlands Watercourses Agency, supra, 536. Although informal and conducted without regard to the strict rules of evidence, hearings before administrative agencies "must be conducted so as not to violate the fundamental rules of natural justice." Id., quoting Connecticut Fund for the Environment, Inc. v. Stamford, 192 Conn. 247, 249,470 A.2d 1214 (1984).
 "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence."
Huck v. Inland Wetlands Watercourses Agency, supra, quoting Connecticut Fund for the Environment, Inc. v. Stamford, supra. "An agency decision must be based on reliable evidence made public and the applicant must have the opportunity to respond to agency concerns." (citation omitted.) Kaeser v. Conservation Commission, supra, 314. "`[A]n administrative agency is not required to believe any witness, even an expert. . . .'" Id., quoting Huck v. Inland Wetlands Watercourses Agency, supra, 542. However, in Feinson v. Conservation Commission, 180 Conn. 421,429 A.2d 910 (1980), the court held that
 in matters of technical complexity, such as pollution control, a lay commission without expertise in the area may not CT Page 2914 substitute its own judgment for contrary expert testimony. To do so without making public the basis of its decision and without offering the applicant an opportunity for rebuttal is to act arbitrarily and without fundamental fairness.
Kaeser v. Conservation Commission, supra, 313, citing Feinson v. Conservation Commission, supra, 428-29.
An applicant is entitled to have its application heard and determined by an impartial and unbiased agency. Huck v. Inland Wetlands Watercourses Agency, supra. "`While it is true that neutrality and impartiality of members of administrative boards and commissions are essential to the fair and proper operation of these authorities . . . a charge of bias must be supported by some evidence proving probability of bias before an official can be faulted. . . .'" Huck v. Inland Wetlands Watercourses Agency, supra, 536-37, quoting Obeda v. Board of Selectman,180 Conn. 521, 523-24, 429 A.2d 956 (1980). "Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly . . . the burden on such a claim rests upon the person asserting it." (citations omitted.) Huck v. Inland Wetlands Watercourses Agency, supra, 537.
Here, as in Huck and Kaeser, the court finds that the record shows "active and probing participation" by Commissioner Patton in questioning the plaintiff's experts. (See ROR, October 17, 1990 Transcript, pp. 24-25, 32, November 7, 1990 Transcript pp. 24-28). See Huck v. Inland Wetlands Watercourses Agency, supra, 544; Kaeser v. Conservation Commission, supra 316. The record reveals that during the Agency's discussion of Mattabassett's application, Commissioner Patton expressed the same concerns and raised the same doubts that he had during his questioning of the two expert soil scientists. (See ROR, November 7, 1990 Transcript pp. 24-28, 35-36; October 17, 1990 Transcript, pp. 24-26).
The court finds that the substance of Commissioner Patton's questioning of Mattabassett's experts clearly showed that Commissioner Patton possessed extensive knowledge of the CT Page 2915 geologic history and hydrology of the Mattabassett River area. (See ROR October 17, 1990 Transcript, pp. 24-25, 32, 34 November 7, 1990 Transcript, pp. 24-28). Commissioner von Mahland stated at the October 17, 1990 hearing that "Attorney Dowley, I think, as you know Mr. Patton is not without some good degree of knowledge on these matters." (ROR, October 17, 1990 Transcript, p. 34). The court finds that simply because Commissioner Patton was an expert geologist who closely questioned the plaintiff's experts and expressed his doubts as to the findings of those experts does not mean that Commissioner Patton should be precluded from expressing his opinions during the discussion among the Agency members when deciding upon Mattabassett's application when Mattabassett was aware of those concerns and opinion. Because Commissioner Patton had expressed the same concerns during the Agency's discussion of the application that he had expressed while questioning the experts, the court finds that Mattabassett had been allowed an adequate opportunity to rebut those concerns during the questioning. Accordingly, the Agency did not "`place its data base beyond the plaintiff's scrutiny.'" (citation omitted.) Kaeser v. Conservation Commission, supra, 315. The court finds that Mattabassett has not met its burden of proving that the Agency's decision was illegal because Commissioner Patton allegedly "testified" as an expert during the Agency's discussion of Mattabassett's application.
The Agency members viewed the site, and it appears that several Agency members, such as Commissioner Carta, were familiar with the site. (ROR, Letter dated October 12, 1990 from Attorney Dowley to William Kuehn; Memorandum dated September 11, 1990 from William Kuehn re: Mattabassett Group site visit; October 17, 1990 Transcript, p. 2; November 7, 1990 Transcript, pp. 29, 36). "Knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for its denial." Huck v. Inland Wetlands Watercourses Agency, supra, 547; see Kaeser v. Conservation Commission, supra, 316. Mattabassett also claims that Commissioner Patton's statements during the Agency's discussion of the application improperly impacted the decision of the other agency members, citing the statement by Commissioner Carta: "I feel that I can't vote . . . in favor of this, if the 100A garage stays where it is. . . . [T]hat land, I know has been flooded many, many times. I know, like Peter [Patton] was explaining that CT Page 2916 water, when it backs up in the spring, sits there for seven, sometimes ten days and all the deposits, I'm sure, all the silt and clay are deposited there. I just feel that I can't vote for it with the garage there." (ROR, November 7, 1990 Transcript, p. 36). This statement, contrary to Mattabassett's contention, does not show any allegedly improper reliance upon technical expertise outside the understanding of a lay person, but rather Commissioner Carta's personal knowledge that the area has been flooded many times and that the area is covered with water in the spring that sits there for several days. (See also ROR, November 7, 1990 Transcript p. 29).
Mattabassett has not met its burden of showing that Commissioner Patton was biased. Simply because Commissioner Patton did not believe Mattabassett's experts, closely questioned those experts, and expressed his concerns and opinion regarding the application during the Agency's discussion, does not mean that he was biased or prejudiced against the application. Mattabassett has not pointed out any evidence in the record, or presented any evidence outside of the record, to support its contention that Commissioner Patton would have denied the application "regardless of any argument or evidence that might have been advanced at the hearing." (See Plaintiff's Brief, p. 15).
Mattabassett has also not met its burden of showing that Commissioner Brooks was prejudiced against its application. The record shows that Commissioner Brooks elicited the concerns and opinions of Commissioner Patton during the Agency's discussion of the application, and thereafter stated that while she was sensitive to the economic downtrend in the area, she believed that the Agency's "obligation is, first to evaluate the environmental impact." (See ROR, November 17, 1990 Transcript, pp. 32-33,35-37). This merely shows that Commissioner Brooks was concerned about the effect of granting the application, and is insufficient, standing alone, to support Mattabassett's conclusion that Commissioner Brooks was prejudiced to its application. (See ROR, November 17, 1990 Transcript, pp. 32-33, 35-37).
Mattabassett argues that the Agency's decision was illegal because it "held a secret meeting in which it voted to deny plaintiff's application." (Plaintiff's Brief, p. CT Page 2917 17). However, the record contains no evidence from which the court could infer that any secret meeting had taken place, and Mattabassett has not offered any evidence outside of the record to support this contention. The court finds that Mattabassett has not met its burden of showing that the Agency's decision was illegal because of a secret meeting and vote.
Mattabassett further argues that the Agency's decision was illegal because it considered a letter from Joyce Scheyer of the Soil Conservation Service (the "SCS Letter") which was not read into the record or otherwise admitted into evidence at the public hearing. Mattabassett claims that it was not given a copy of the SCS Letter or an opportunity to rebut its contents, and that it did not know of its existence until one of the commissioners stated that she was basing her rejection of the application on the SCS Letter. Mattabassett further asserts that consideration of the SCS Letter was in contravention of the Middletown Inland Watercourses Wetland Regulation which provides that correspondence from the public will be considered by the Agency provided it is submitted eight working days before the regularly scheduled meeting. See Regulations 12.1.
Boards and commissions are entitled to technical and professional assistance in matters which are beyond their expertise. Pizzola v. Planning Zoning Commission,167 Conn. 202, 208, 355 A.2d 21 (1974); Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 571,538 A.2d 1039 (1988). Such assistance may be rendered in executive session. Pizzola v. Planning Zoning Commission, supra. "The use of such assistance, however, cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." (Emphasis added.) Id.
It should be noted that there is no evidence that the SCS Letter was submitted or supplied "by a party to the controversy." See Id. As a result of the October 17, 1990 hearing, Mattabassett was asked to provide for the November 7, 1990 hearing, additional information regarding its soil scientist's data and updated copies reflecting the revisions it had made regarding its application and the elimination of building 500 from its plans. (See ROR, October 17, 1990 CT Page 2918 Transcript, pp. 34-35). It appears from the document in the record that the revised proposal and maps were submitted on approximately October 26, 1990. (See ROR, Letter marked "Hand Delivered" dated October 26, 1990 from Attorney Dowley to Agency. In the SCS Letter dated November 2, 1990 and marked received by the Agency on November 5, 1990, Joyce Scheyer refers to the receipt of the maps on October 29, 1990 by the Soil Conservation Service and site visit on October 31, 1990. (ROR, SCS Letter).
The wording of the SCS Letter indicates that it was written in response to the receipt of the "revised drawings" submitted by Mattabassett to the Agency on October 26, 1990 (See ROR, SCS Letter); however, the letter does not clearly indicated that it was written in response to a request from the Agency for a review of Mattabassett's revised drawings and an opinion on the feasibility of the project. It is unclear whether this letter is "correspondence from the public" which will be considered by the Agency provided it is submitted eight working days before the "regularly scheduled meeting" or whether it was a response to a request by the Agency for "professional or technical assistance in carrying out its responsibilities." Frito-Lay, Inc. v. Planning 
Zoning Commission, supra ("Where a commission is composed of laymen, it is entitled to professional technical assistance in carrying out its responsibilities."); Pizzola v. Planning Zoning Commission, supra, 208.
While Mattabassett asserts in its brief that it had no knowledge of the letter and never received a copy of the letter, and thus had no opportunity to rebut it, no evidence has been submitted which would show that the letter was not physically present and available for review at the November 7, 1990 public hearing or that Mattabassett was deprived of an opportunity to review the letter at the hearing. There is no evidence in the record, and no evidence has been presented, which would show that the SCS Letter was an illegal ex parte communication or that Mattabassett was deprived of its ability to rebut its contents.
B. Substantial Evidence
Mattabassett contends that the Agency's decision was arbitrary, capricious and constitutes an abuse of discretion because a review of the transcripts of the public CT Page 2919 hearing reveals that all of the reasons stated by the Agency for its denial were either based upon the "illegal testimony" of Commissioner Patton, or the SCS Report and are thus "based on evidence outside the record," or "are outside the jurisdiction of defendant Agency." (Plaintiff's Brief, pp. 18-19). Mattabassett contends that the Agency "could not reject" the testimony presented by its two soil science experts on the technically sophisticated and complex issue of the soil under the proposed 100A garage because it was beyond the knowledge and experience of the Commission. Mattabassett further contends that the Agency's reason that "the project represents an undesirable infringement on the wetlands system" and "the value of the floodplain forest within the project area" "could only be based on the illegal SCS report." (Plaintiff's Brief, p. 21).
Mattabassett asserts that the Agency exceeded its jurisdiction when it cited as a reason for its denial that there was a need for a larger setback from the Mattabassett River because the Agency did not delineate the proposed project's impact on the river. Mattabassett also asserts that the Agency did not balance the need for the economic growth of the state and the use of its land with the need to protect the environment and ecology as required by both the Middletown Inland Wetland and Watercourses Regulations and General Statutes 22a-36. Mattabassett claims that the Agency engaged in a "one-sided process" because it did not discuss the economic growth aspect. Mattabassett contends that, at a minimum, the Agency is required to discuss the economic comments at the hearing, favorable to its application, as well as those evidencing environmental concerns to show that it had appropriately balanced these competing needs.
The Agency contends that the reasons cited for its denial are adequately supported by the substantial evidence in the record. The Agency further asserts that just because it did not grant the application does not mean that it did not consider all of the evidence presented in the light of all the factors it was required to consider in deciding upon such an application.
A number of the arguments raised by Mattabassett in support of its contention that the Agency's decision is not supported by substantial evidence were also raised in support CT Page 2920 of its contention that the decision was illegal because of procedural improprieties. Mattabassett's arguments regarding its claim that the Agency's decision was arbitrary and capricious in that it was not supported by substantial evidence rely on Mattabasset's assumption that Commissioner Patton's comments were illegal, and that the SCS Letter was an improper ex parte communication. Mattabassett's assertions appear to rely on its assumption that the court will not consider Commissioner Patton's comments and the SCS Letter, and with these excluded from the record, there remains no evidence in support of the reasons given by the Agency for its decision. Mattabassett appears to assume that the reasons given by the Agency for its decision were based solely on the evidence which Mattabassett claims was illegal, and are unsupported by any other evidence in the record.
The Agency's decision is supported by the substantial evidence in the record. For example, with respect to the Agency's stated reason that "the project represents an undesirable infringement on the wetlands system," the record contains evidence that growing within the area which Mattabassett sought to develop is the "relatively rare" species of herbaceous plant known as "Green Dragon." (ROR, October 17, 1990 Transcript, p. 13; Letter dated August 14, 1990 from Ronald Klattenberg, Chairman, Middletown Conservation Commission to William von Mahland, Agency Chairman Letter dated August 31, 1990 from Kenneth Metzler, Senior Biologist, Connecticut Department of Environmental Protection to Ronald Klattenberg). Members of the public also testified regarding concerns that runoff of fluids in parking lots, and fertilizer and insecticides runoff would adversely impact the wetlands. (ROR, October 17, 1990 Transcript, p. 10, November 7, 1990 Transcript, p. 11). A representative of the Mattabaseck Audubon Society testified as to many concerns, including the numerous species of small animals and birds present in the wetlands area which would be adversely affected by the proposed development, the adverse impact upon the wetlands of the fill that will be required in building the bridge, the impact of heavy machinery which will be used for construction, and the potential for permanent submersion of tidal marshes due to encroaching development in the floodplain. (ROR, October 17, 1990 Transcript, pp. 10-14; document titled "The Position of the Mattabeseck Audubon Society with regards to the proposed wetland application by the Mattabassett Group.") CT Page 2921
With respect to the Agency's stated reason: "belief that the floodplain soils result from backwater flooding as opposed to glacial till," the Agency was not required to believe the expert testimony, and the record shows that Commissioner Patton expressed his doubts, closely questioned the experts regarding those doubts and clearly stated the reasons for his opinion on the record, and Commissioner Carta stated that he knew that the area had been flooded many times. With respect to the Agency's stated reasons: "the importance of the floodplain and wetlands as ranked in the Purcell Report," and "the value of the floodplain forest within the project area," the Agency heard testimony from Ronald Klattenberg Chairman of the Conservation Commission regarding the Purcell Report's description of the wetlands along the Mattabassett River as perhaps the most "outstanding swamp in Middletown" and a "critical habitat for wildlife." (ROR, November 7, 1990 Transcript, pp. 15-16; Memorandum dated November 1, 1990 from Ronald Klattenbery re: Mattabassett Office Complex, with attachments.)
With respect to the Agency's stated reason: "the 100A garage would represent (sic) in a change in the hydraulics of the floodplain," the Agency also heard the recommendation of Ronald Klattenberg, that the garage be removed "because of the overall importance of this floodplain" (ROR, November 7, 1990 Transcript, p. 16). Attorney Dowley also stated that the 100A garage would not inhibit "the work in the floodplain," but rather the construction of the garage "would be able to increase the flood storage capacity of the area." (ROR, November 7, 1990 Transcript, pp. 17-18). Even though Attorney Dowley asserts this as a benefit, it still represents a change which the Agency may not have seen as beneficial to the wetlands. The record also reflects that constructing the garage would require filling and grading in the area (ROR, November 7, 1990 Transcript, pp. 20-21). Commissioner Patton further stated that a smooth parking lot surface with rip rap underneath the 100A garage would represent a change in the hydraulic characteristics of the floodplain surface. (ROR, November 7, 1990 Transcript, p. 36).
Based on the foregoing discussion, the court finds that Agency's denial of Mattabassett's application is CT Page 2922 supported by substantial evidence.
Finally, letters were submitted to the Agency and members of the public testified at the hearing regarding the favorable impact of Mattabassett's proposed project upon the local economy. (ROR, "Planning and Zoning Comments to IWWA, July 12, 1990"; Memorandum dated October 16, 1990 from Bill Warner, Acting Director, Planning and Zoning Department to Agency; October 17, 1990 Transcript, pp. 8-9; November 7, 1990 Transcript, p. 9). While the Agency members did not discuss in detail the evidence relating to the economic impact of Mattabassett's application, Mattabassett has cited no authority which requires that, the Agency discuss that evidence on the record in order to show that it was considered. Simply because the Agency members did not discuss the economic evidence does not mean that they each disregarded it or failed to weigh that evidence against the evidence relating to environmental impact. Accordingly, Mattabassett has not met its burden of proving that the Agency's decision was arbitrary and capricious because it failed to balance the economic and environmental impacts of Mattabassett's application.
C. Taking Without Compensation
Mattabassett asserts that the Agency's denial of its application constituted a taking of its property without compensation.
General Statutes 22a-43a(a) provides:
 If upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking. In both instances the court shall remand the order to the inland wetland agency for action not inconsistent with its decision.
The trial court decides takings claims de novo in the light of all the evidence presented to it, including, but not limited to, the administrative record. Cioffoletti v. CT Page 2923 Planning Zoning Commission, 209 Conn. 544, 551,552 A.2d 796 (1989) (Cioffoletti I); see Gil v. Inland Wetlands 
Watercourses Agency, 219 Conn. 404, 409, 593 A.2d 1368
(1991); see also Cioffoletti v. Planning Zoning Commission,220 Conn. 362, 364-65, 599 A.2d 9 (1991) (Cioffoletti II). In determining whether a taking has occurred, the public interests are to be balanced against those of private landowners. Cioffoletti I, supra, 562. "`Short of regulation which finally restricts the use of property for any reasonable purpose, resulting in a "practical confiscation," the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner.'" Cioffoletti I, supra, 562-63, quoting Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349, 356, 362 A.2d 948
(1975); see also Cioffoletti II, supra, 368. "[E]vidence may be admitted that is material to the taking issue both as it relates to the plaintiffs' financial detriment and as it relates to the advancement of the public interest." Cioffoletti II, supra, quoting Cioffoletti I, supra, 563.
The record contains no evidence, nor has Mattabassett offered any evidence, which shows that the denial of its application finally restricted the use of its property for any reasonable purpose, or resulted in a "practical confiscation." Mattabassett has presented no evidence as to any diminution in the value of its property or that no feasible alternatives to the proposed plans regarding the development of the property described in this particular application are available to it. Accordingly, Mattabassett has not met its burden of proving that the Agency's denial of its application constitutes a taking of its property without compensation.
For all the foregoing reasons, the plaintiff's appeal is dismissed.
O'Connell, J.
Judgment in accordance with the foregoing Memorandum of Decision CT Page 2924
Michael Kokoszka, Clerk