[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the decision of the defendant, Canterbury inland wetland and watercourses commission (the commission), denying an application of the plaintiff, Sterling Development Corporation (Sterling), to conduct certain regulated activities. Sterling brings this appeal pursuant to General Statutes § 22a-43.
 BACKGROUND
On May 24, 2000, Sterling applied to the commission for a permit to construct an eighty-six lot subdivision on a 240 acre parcel of land CT Page 5498 located off Lisbon Road in Canterbury, Connecticut. (Return of Record [ROR], Exhibit 1.) Approximately fifty-four acres of the site constitute wetlands. (ROR, Exhibit 129, p. 1.) The proposal would fill about .66 acres of wetlands to allow for road construction. (ROR, Exhibit 129, p. 1.) The commission held a public hearing commencing on October 25, 2000, and continued to November 15, 2000, December 20, 2000 and January 17, 2001. (ROR, Exhibits 89-92.) On February 28, 2001, the commission denied Sterling's application, concluding that (1) the proposed subdivision would have a significant and negative impact on the wetlands in question; (2) the final submitted plan lacked details and features necessary to ensure the protection of the wetlands; and (3) that there existed at least three feasible and prudent alternatives to the proposal. (ROR, Exhibit 25.)
On March 7, 2001, Sterling received notice of the commission's decision. (ROR, Exhibit 41.) Notice of the decision was subsequently published in the Norwich Bulletin. (ROR, Exhibit 40.) Sterling filed this appeal alleging that the commission acted arbitrarily, illegally and in abuse of its discretion in denying its application. On September 18, 2001, Sterling filed a supporting brief. On October 15, 2001, the commission filed a brief in opposition. On October 18, 2001, the commissioner of environmental protection also filed a brief.
 JURISDICTION
Before addressing the substantive components of this appeal, the court must address the threshold issue of aggrievement. "[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." (Citation omitted; internal quotation marks omitted.) Harris v. Zoning Commission, 259 Conn. 402, 409, ___ A.2d ___ (2002). The plaintiff asserts aggrievement as the owner of the property subject to the application.
General Statutes § 22a-43 governs wetlands appeals. It provides that: "[A]ny person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive . . . may . . . appeal to the superior court for the judicial district where the land affected is located . . ." General Statutes § 22a-43
(a). Sterling's status as the owner of the property subject to the application establishes standing to raise the present appeal.Huck v. Inland Wetland Watercourses Agency,203 Conn. 525, 530, 525 A.2d 940 (1987). Sterling is statutorily aggrieved, pursuant to § 22a-43 (a), and has standing to bring this appeal CT Page 5499
The next issue is whether Sterling timely served the defendants. General Statutes § 22a-43 (a) provides in relevant part that an appeal from a decision by the inland wetlands commission must be commenced "within the time specified in subsection (b) of section 8-8 from the publication of such . . . decision or action. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." Additionally, "[t]he commissioner may appear as a party to any action brought by any other person within thirty days from the date such appeal is returned to the court." General Statutes § 22a-43 (a). General Statutes § 8-8 (b) provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." General Statutes § 8-8 (b).
The record contains an affidavit of publication attesting that notice of the commission's decision was published in the Norwich Bulletin on March 8, 2001. (ROR, Exhibit 40.) On March 21, 2001, this appeal was commenced by service of process on the assistant town clerk of Canterbury, the chairman of the Canterbury inland wetland and watercourses commission, and the department of environmental protection. The court finds that this appeal was commenced in a timely manner by service of process on the proper parties.
 STANDARD OF REVIEW
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial. . . ." (Internal quotation marks omitted.) Samperiv. Inland Wetlands Agency, 226 Conn. 579, 587-88, 628 A.2d 1286 (1993).
It is well established that when "challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . ." (Internal quotation marks omitted.) Newton v. Keeney, 234 Conn. 312, 319, 661 A.2d 589 (1995);Samperi v. Inland Wetlands Agency, supra, 226 Conn. 587. "The reviewing court may grant relief from the agency's decision only where the decision is arbitrary, illegal or not reasonably supported by the evidence." (Internal quotation marks omitted.) Keiser v. Conservation Commission, CT Page 550041 Conn. App. 39, 41, 674 A.2d 439 (1996).
 ISSUES ADDRESSED
As previously mentioned, Sterling appeals on the basis that the commission acted arbitrarily, illegally and in abuse of its discretion. Sterling alleged and briefed the following claims of error: (1) the commission denied the application by determining feasible and prudent alternatives existed; (2) the commission denied the application by concluding that the plans were incomplete; (3) the commission denied the application by determining that the proposal would have a substantial and adverse impact on the wetlands; (4) the commission acted with prejudice and bias; and (5) the commission exacted a taking of Sterling's land without compensation pursuant to General Statutes § 22a-43a.
 A Whether the Commission Properly Denied the Application Because Feasible and Prudent Alternatives Existed
Sterling argues that the commission improperly determined that there were feasible and prudent alternatives to the proposed plan. The commission responds that it properly adhered to General Statutes §22a-41, as well as its corresponding regulations, in finding that there were three possible alternatives that would have less of an impact on the wetlands. Additionally, the commission contends that Sterling did not meet its burden demonstrating that its proposal was the most feasible. The commission properly determined that there were feasible and prudent alternatives to Sterling's proposal.
General Statutes § 22a-42a (d) (1) provides in pertinent part that "[i]n granting, denying or limiting any permit for a regulated activity the inland wetlands agency, or its agent, shall consider the factors set forth in section 22a-41, and such agency . . . shall state upon the record the reason for its decision." General Statutes § 22a-42a (d) (1). The factors set forth in section 22a-41 (a)[1] include the existence of any feasible and prudent alternatives to the proposed activity which would cause less or no environmental impact to the wetlands or watercourses. General Statutes § 22a-41 (a) (2). Section22a-41 (b) provides in relevant part that when the commission makes a finding "that the proposed activity may have a significant impact on wetlands or watercourses, a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist." General Statutes § 22a-41 (b).
"[A]n applicant for an inland wetlands permit has the burden of proving CT Page 5501 that it has met the statutory prerequisites for a permit. . . . The applicant, accordingly, must demonstrate to the local inland wetlands agency that its proposed development plan, insofar as it intrudes upon wetlands, is the only alternative that is both feasible and prudent." (Citations omitted.) Samperi v. Inland Wetlands Agency, supra,226 Conn. 593. "Thus, for a wetlands permit to issue, the local inland wetlands agency must determine that the alternative presented by the applicant is not only sound from an engineering standpoint but is also economically reasonable in light of the social benefits derived from the activity. . . . An alternative will be deemed to be a feasible and prudent alternative only if meets both criteria." (Citation omitted; internal quotation marks omitted.) Id., 595.
In denying the application, the commission proffered three alternatives: (1) maintaining a 100 foot undisturbed regulated area along the boundary of the wetlands associated with Corey Brook; (2) maintaining a minimum fifty foot activity-free buffer and avoiding concentrated activity within the 100 foot regulated area along the boundaries of the upland wetlands; and (3) relocation of Frost District Road in an easterly and uphill direction to support the maintenance of the 100 foot regulated area along Cory Brook and to avoid the unnecessary crossing of the wetlands area. (ROR, Exhibits 25, 42.) The three alternatives proffered by the commission will be addressed in turn.
 1 Alternative One: Maintaining a 100 Foot Undisturbed Regulated Area Along the Boundary of the Wetlands
Sterling argues that the first alternative relating to the 100 foot undisturbed area is improper because the commission's regulations do not require such a buffer. To this end, Sterling contends that the commission acted beyond the scope of its authority. The commissioner of the department of environmental protection counters that an inland wetlands commission is empowered to regulate activities conducted in areas other than wetlands so long as such activities are found to impact the wetlands significantly and adversely. Sterling's arguments are unavailing.
"Section 22a-42a (f) provides that an inland wetlands agency may regulate activities outside of wetlands areas, [i]f a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses and those activities . . . are likely to impact or affect wetlands or watercourses. This statutory language codifies our previous statement in the seminal case of Aaron v. Conservation Commission . . . wherein we emphasized that [a]n examination of the act reveals that one if its major considerations is the environmental impact of proposed CT Page 5502 activity on wetlands and water courses, which may, in some instances, come from outside the physical boundaries of a wetland or water course. In Aaron, we held that activity that occurs in nonwetlands areas, but that affects wetlands areas, falls within the scope of regulated activity." (Citation omitted; emphasis in original; internal quotation marks omitted.) Queach Corp. v. Inland Wetlands Commission, 258 Conn. 178,197-98, 799 A.2d 134 (2001).
The Canterbury inland wetlands and watercourses regulations define "regulated activity."[2] The regulations specifically provide that "[a]t its discretion, the Agency may rule that any other activity located within such upland review area or in any other non-wetlands or non-watercourse area may have an adverse impact on wetlands or watercourses and is a regulated activity. Canterbury Inland Wetlands and Watercourses Regs., § 2.1. The commission possesses the authority to condition or prohibit regulated activity within the area in question.
The record evinces substantial evidence in support of the commission's decision that the 100 foot buffer is a feasible and prudent alternative. In making its decision, the commission considered the Eastern Connecticut Environmental Review Team Report (ERT). The ERT report suggested that the applicant revise its plans to incorporate a 100 foot buffer zone. (ROR, Exhibit 106, p. 43.) A significant portion of the public hearings addressed the ERT report and the propriety of a 100 foot buffer. (ROR, Exhibits 90-91.) Specifically, the commission and the applicant spent considerable time discussing the appropriate demarcation of the 100 foot buffer zone. (ROR, Exhibits 90, pp. 21-23.)
Sterling further argues that the commission improperly relied upon the ERT report. Yet, when reviewing the agency's decision under the substantial evidence standard, the reviewing court must "defer to the agency's assessment of the credibility of the witnesses . . . even an expert, in whole or in part." (Internal quotation marks omitted.)Gardiner v. Conservation Commission, 222 Conn. 98, 108, 608 A.2d 672
(1992). "[A]n administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Internal quotation marks omitted.)Samperi v. Inland Wetlands Agency, supra, 226 Conn. 597. Moreover, "[k]nowledge obtained through personal observations of the locus may be properly considered by the agency in arriving at reasons for its denial." (Internal quotation marks omitted.) Kaeser v. Conservation Commission,20 Conn. App. 309, 316, 567 A.2d 383 (1989). The commission's reliance on the report does not constitute a basis for sustaining this appeal.
 2 CT Page 5503 Alternative Two: Maintaining a Minimum Fifty Foot Activity-Free Buffer and Avoiding Concentrated Activity Within the 100 Foot Regulated Area Along the Boundaries of the Upland Wetlands
Sterling next contends that the commission erred in determining that a more feasible and prudent plan included a fifty foot activity-free buffer and a lack of concentrated activity within the 100 foot regulated area. The commission responds that the record supports its decision.
As previously stated, the Canterbury regulations provide the commission with the discretion to regulate certain activities within 100 feet of wetlands and watercourses as well as any non-wetland area. Canterbury Inland Wetlands and Watercourses Regs., § 2.1. Accordingly, the commission can prohibit activity within this area if it deems such activity detrimental to the wetlands and watercourses in question. This determination comports with the broad authority vested in municipal inland wetlands agencies and enables the agencies enough flexibility to adapt to infinitely variable conditions for the effectuation of the purposes of [the inland wetlands] statutes." (Internal quotation marks omitted.) Queach Corp. v. Inland Wetlands, supra, 258 Conn. 199. The commission's reliance on the ERT report and the significant discussion concerning the 100 foot buffer satisfy the substantial evidence standard.
Sterling also argues that the commission's decision is erroneous because it included a fifty foot buffer in its plans. Sterling indicated that its proposal would include a fifty foot buffer; however, there would be some road construction within fifty feet of the wetlands. (ROR, 90, p. 14.) Appropriate buffer width was discussed throughout the public hearings. (ROR, 90, pp. 14, 23, 25-26.) The ERT report also assessed the proposal with respect to buffer zones in general as well as riparian buffer zones. (ROR, Exhibit 106.) Finally, the reports submitted by Towne Engineering, Inc. reflect some of the changes made by Sterling, (ROR, Exhibits 110, 126), but ultimately conclude that the proposal did not include a "current suitable scheme proposed by these plans to provide a reliable method to safeguard the fifty foot Inland Wetland buffer proposed in many locations." (ROR, Exhibit 62, p. 4.) Accordingly, the commission's second proposed alternative is supported by the record.
 3 Alternative Three: Relocation of Frost District Road in an Easterly and Uphill Direction
Sterling next argues that the commission erred in determining that a CT Page 5504 more feasible and prudent alternative would be to relocate Frost District Road further up the hill so as to maintain a 100 foot buffer zone from the wetlands. The commission argues in opposition that the record satisfies the substantial evidence standard. The commission questioned Sterling's representatives about the placement of Frost District Road during the public hearing held on November 15, 2000. (ROR, Exhibit 91, p. 24.) The reports submitted by Towne Engineering also raised concerns about the impact of Frost District Road on the nearby wetlands. (ROR, Exhibit 126.) Additionally, the ERT report discussed possible problems with the wetland crossings associated with Frost District Road. (ROR, Exhibit 106, pp. 16, 41-42.) Substantial evidence supports the commission's decision that its third alternative would have less of an impact on the wetlands.
The record demonstrates that the commission considered the factors set forth in § 22a-41 and determined that the above mentioned proposals were feasible and prudent alternatives. Accordingly, the court will not sustain this appeal on the ground that the commission improperly concluded that feasible and prudent alternatives existed.
 B. Whether the Commission Erred in Determining that the Plans lacked Details Necessary to Determine Whether Prudent and Feasible Alternatives Existed
Sterling next argues that the commission erred in denying the application because the plans lacked details necessary to ensure the protection of the wetlands in issue. The commission responds that the plans do not satisfy the applicant's evidentiary burden of showing that no alternatives existed. Sterling's arguments are without merit.
The record reasonably demonstrates that the plans are incomplete. The Towne Engineering reports stated that the plans do not provide enough information to support the conclusion that the proposal is the best alternative or that the subdivision would not adversely impact the wetlands. (ROR, Exhibits 62, 110, 126.) Moreover, on November 15, 2000, Donald Aubrey, of Towne Engineering, testified that the plans were incomplete and, therefore, it was difficult to determine exactly what effect the proposal would have on the wetlands. (ROR, Exhibit 91, pp. 40-43.) It is worth repeating that a reviewing court must "defer to the agency's assessment of the credibility of the witnesses. . . ." (Internal quotation I marks omitted.) Gardiner v. ConservationCommission, supra, 222 Conn. 108. This claim of error is not an appropriate basis for sustaining the present appeal. CT Page 5505
 C Whether the Commission Erred in Determining that the Application Will Have a Substantial Adverse Impact on the Wetlands and Watercourses
Sterling's next claim of error is that the commission improperly determined that the proposal would adversely impact wetlands and watercourses. The commission responds that there is substantial evidence supporting its decision to deny the application, in part, on the basis that the proposed regulated activity would adversely impact wetlands and watercourses. Substantial evidence supports the commission's decision.
Section 22a-41 (a) sets forth the criteria that the commission must consider in rendering a decision on Sterling's application.[3] The Canterbury regulations mirror the statute. See Canterbury Inland Wetlands and Watercourses Regs., § 10.2. The criteria generally require the commission to assess the impact of the proposed regulation on the wetlands at issue and the surrounding environment.
The commission denied Sterling's application based upon the extensive evidence before it. The ERT report indicated that the development proposal would adversely impact wetlands and watercourses. In responding to the concerns raised by the commissioners with respect to development, the ERT report emphasized that the "[c]umulative impacts of the proposed development, though not quantified with the site plan application, are quite significant within the 100 foot wetland buffer area." (ROR, Exhibit 106, p. 17.) The report underscored the importance of Cory Brook to the surrounding wetlands and suggested that Sterling pursue alternative development techniques. (ROR, Exhibit 106, pp. 19-20.) The report also stated that the road crossing at Frost District Road could easily dam. (ROR, Exhibit 106, p. 41.)
In addition to the ERT report, the Towne Engineering reports also demonstrate the possibility of significant adverse impact on the wetlands. Towne Engineering raised general concerns about the grading plans, the farm dumping sites and erosion control. (ROR, Exhibits 62, 110, 126.) For example, Donald Aubrey's report, dated February 1, 2001, stated that "[t]he current ES measures are currently not adequate for the construction of Frost District Road from Station 14+0 to Station 23+50 and need to be revised to avoid significant temporary impacts to both wetland areas crossed in this location." (ROR, Exhibit 62, p. 4.)
The public hearing transcripts are replete with discussions regarding the impact of the proposed subdivision on the designated wetlands. On October 25, 2000, Sterling introduced its application and was immediately CT Page 5506 presented with questions relating to the impact of the proposed subdivision on the wetlands. (ROR, Exhibit 92, pp. 3, 12, 18.) The commission raised particular concerns about the impact of the development on Cory Brook. (ROR, Exhibit 92, p. 21.) The subsequent hearing on November 15, 2000, also included significant discussion regarding Frost District Road and the removal of certain wetlands. (ROR, Exhibit 91, pp. 18, 24.) Finally, the parties debated the substance of both the ERT report and the Towne Engineering reports. (ROR, Exhibits 90-91.) The commission properly considered the criteria set forth in § 22a-41
(a), as well as its regulations, and accordingly, the record supports a conclusion that the proposal would adversely impact the wetlands at issue.
 D Whether the Commission Acted with Prejudice and Bias in Denying Sterling's Application
Sterling next argues that its appeal should be sustained because the application process was rendered fundamentally unfair in the following ways: (1) commissioner Kelly had already formed an opinion; (2) Kelly and commissioner Pindell conducted independent research; and (3) Kelly participated heavily in the deliberations and referred to case law in supporting a denial of the application. The commission contends that the record demonstrates that Kelly had not formed an opinion with respect to the application. Sterling did not meet its burden necessary to establish actual bias.
Parties to an administrative agency proceeding are entitled to be heard and have the issues determined by an impartial and unbiased tribunal.Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 536. Connecticut law presumes that agency officials serving as adjudicators are unbiased. Clisham v. Board of Police Commissioners, 223 Conn. 354,362, 613 A.2d 254 (1992). This presumption can be rebutted by showing bias, but the burden of establishing that bias rests on the party making the contention. Petrowski v. Norwich Free Academy, 199 Conn. 231, 236,506 A.2d 139, appealed dismissed 479 U.S. 802, 107 S.Ct. 42, 93 L.Ed.2d 5
(1986). "To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias . . . unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable." (Internal quotation marks omitted.) Rado v.Board of Education, 216 Conn. 541, 556, 583 A.2d 102 (1990).
"In order to prove bias as a ground for disqualification, the plaintiff must show more than an adjudicator's announced previous position about law or policy. . . . [The plaintiff] must make a showing that the CT Page 5507 adjudicator has prejudged adjudicative facts that are in dispute. . . . A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing. . . . The test for disqualification has been succinctly stated as being whether a disinterested observer may conclude that [the board] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." (Citations omitted; internal quotation marks omitted.) Clisham v. Board of PoliceCommissioners, supra, 223 Conn. 362. This is a question of fact for the reviewing court. Transportation General, Inc. v. Insurance Dept.,36 Conn. App. 587, 596, 652 A.2d 1033, cert. granted, 232 Conn. 920,656 A.2d 670 (1995), appeal dismissed, 236 Conn. 75 (1996).
Sterling's argument is essentially one of predetermination. Such a claim requires Sterling to establish that Kelly formulated an opinion regarding the application prior to the public hearings. Woodburn v.Conservation Commission, 37 Conn. App. 166, 175, 655 A.2d 764, cert. denied, 233 Conn. 906, 657 A.2d 645 (1995). A commissioner may, however, hold tentative opinions regarding a particular application. "[T]he law does not require that members of . . . commissions must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true." Cioffoletti v. Planning ZoningCommission, 209 Conn. 544, 555, 552 A.2d 796 (1989), appeal after remand, 220 Conn. 362, 599 A.2d 9 (1991).
Sterling did not establish predetermination. Sterling relies on a brief exchange between its representatives and Kelly during the public hearing held on November 15, 2000. Kelly initially responded that she had formulated an opinion as to whether the proposal would be detrimental to the wetlands. (ROR, 91, p. 12.) Kelly ultimately stated, however, that she had not come to any conclusions, rather she was still in the process gathering information. (ROR, Exhibit 91, p. 13.) On December 20, 2000, Kelly reiterated that she had not proffered an individual opinion at the previous hearing. (ROR, Exhibit 90, p. 4.) Accordingly, Sterling received a fair hearing in so far as its claim of predetermination.
Sterling also argues that commissioners Kelly and Pindell conducted their own research. To buttress its argument, Sterling refers solely to the comments of the commission's attorney reminding the commissioners that they are limited to the evidence on the record. (ROR, Exhibit 90, p. 4.) Moreover, Sterling does not provide any evidence that Pindell relied on information outside of the record with respect to vortex units. The commission responds that evidence regarding vortex units was added to the record prior to the end of the hearings. (ROR, Exhibit 98). The evidence submitted by Sterling does not establish actual bias.
Sterling finally argues that Kelly "participated heavily" in the CT Page 5508 deliberations that led to the denial of the application. This argument is premised upon the assumption that Kelly already reached an opinion adverse to Sterling. As previously stated, Sterling did not sufficiently establish predetermination and, accordingly, Kelly's participation in the deliberations was no different than any other commissioner.
 E Whether the Commission's Denial of Sterling's Application Constitutes a Taking Without Compensation Pursuant to General Statutes § 22a-43a
Sterling alleges in paragraph five of its complaint that the commission acted illegally, arbitrarily and in abuse of its discretion in that its denial of the application affected a taking without compensation. Sterling does not, however, brief this claim of error. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." Rodriguez v. Mallory Battery Co., 188 Conn. 145, 149, 448 A.2d 829
(1982). Sterling's bald assertion of a taking does not provide an appropriate basis for sustaining this appeal.
 CONCLUSION
The record evinces substantial evidence supporting the commission's decision. The plaintiff did not establish actual bias warranting reversal of the commission's decision. Based on the foregoing reasons, this appeal is dismissed.
BY THE COURT ____________________________ Francis J. Foley III Judge of the Superior Court