ROBERT CIOFFOLETTI ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF RIDGEFIELD
(13403)

PETERS, C. J., HEALEY, SHEA, GLASS and COVELLO, Js.

Argued October 13, 1988—decision released January 10, 1989

*Melvin J. Silverman,* for the appellants-appellees (plaintiffs).

*Thomas W. Beecher,* for the appellee-appellant (defendant).

SHEA, J. The plaintiffs, Robert and Catherine Cioffoletti, owners of a parcel of land in Ridgefield used for the mining and excavation of sand and gravel, appealed to the Superior Court after the defendant, the Ridgefield planning and zoning commission, acting as the town's inland wetlands board, granted with certain modifications and conditions the plaintiffs' application to expand their mining operation. The trial court dismissed the appeal, finding no infirmities in either the town's regulations or the procedures that were followed. This appeal followed.

On appeal, the plaintiffs claim that the trial court erred in holding: (1) that evidence offered in support of their claim of an unconstitutional taking, as to the economic effect of the defendant's action upon the plaintiffs was inadmissible; (2) that the plaintiffs received a fair hearing; (3) that the defendant may regulate activity in nonwetlands areas that affects wetlands areas; (4) that the defendant has the authority to require a performance bond; and (5) that the defendant's action has not violated constitutionally protected property rights of the plaintiffs because (a) the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 through 22a-45, as applied by the commission, does not constitute a taking for a public purpose without just compensation; (b) the defendant's modifications of the application as granted substantially

advance a legitimate state interest; and (c) the regulations adopted by the defendant pursuant to the inland wetlands statute contain adequate standards and, therefore, comport with due process.

In its cross appeal, the defendant claims that the trial court erred in allowing the plaintiffs to amend their appeal to include additional issues. We dismiss the cross appeal because the defendant has not been aggrieved by the judgment dismissing the plaintiffs' appeal.[1]

We conclude that the trial court should have allowed the plaintiffs to introduce evidence of the economic impact of the defendant's ruling. With respect to the other nonconstitutional claims of the plaintiffs, we find no error. We decline consideration of the merits of the plaintiffs' constitutional claims at this juncture, however, because, without the excluded evidence, such consideration would be premature and is not essential to the disposition of the appeal. See *Moore* v. *McNamara*, 201 Conn. 16, 21, 513 A.2d 660 (1986). Accordingly, we remand the case to the trial court for further proceedings.

The following facts are ascertainable from the record or are undisputed. The plaintiffs are the owners of a twenty-three acre parcel of land located in Ridge-

---

[1] Errors claimed by a nonaggrieved party should be raised in a preliminary statement of issues under Practice Book § 4013 (a) (1), not under § 4005, which requires that the appellee be aggrieved in order to file a cross appeal. *Orticelli* v. *Powers,* 197 Conn. 9, 11 n.1, 495 A.2d 1023 (1985). Because the defendant filed a preliminary statement of issues within fourteen days from the filing of the appeal, we treat that statement as setting forth an alternate ground upon which the judgment may be affirmed. See Practice Book § 4013.

The defendant claims in its preliminary statement and brief that the trial court erred in allowing the plaintiffs to amend their appeal. The trial court has wide discretion, however, in granting or denying amendments before, during, and even after trial. *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357 (1971). The record indicates that the plaintiffs amended their appeal nearly nine months before the hearing. Because the defendant has not demonstrated how it was prejudiced by the amendment, we hold that the trial court did not abuse its discretion.

field. The premises are currently used, and have been used for many years, for the mining and excavation of sand and gravel. In November, 1984, pursuant to the Ridgefield inland wetlands and watercourse regulations, the plaintiffs applied to the defendant in its capacity as the town's inland wetlands board, for permission to expand the mining operation within and adjacent to existing wetlands. The proposed expansion was divided into five areas, each representing proposed increments for each two of the next ten years.

The defendant referred the plaintiffs' application to the Fairfield county soil and water conservation district, the United States department of agriculture soil conservation service, and the Connecticut department of environmental protection, all of which approved the application.

On December 18, 1984, January 8, 1985, and March 12, 1985, the defendant held public hearings on the application. At the hearings, various members of the public, including the plaintiffs' neighbors, spoke out in opposition to the application. They complained of traffic and noise problems at the mining site, and they offered expert testimony and reports that reached conclusions nearly the opposite of those reached by the governmental agencies. The opponents' expert stated, for example, that the proposed excavation would have an adverse impact on the existing flood plain portions of the wetlands. This expert further maintained that the governmental agencies had not addressed the possibility of diminished water quality that might result if oil and gasoline used to operate the mining equipment were spilled and thereafter entered the ground water system. After the March 12, 1985 hearing was terminated, the defendant approved the plaintiffs' application but voted to reduce substantially the area upon which they sought to excavate.

On April 16, 1985, the defendant issued the plaintiffs a special permit with several conditions, including a requirement that they post a $100,000 performance bond. The plaintiffs filed an administrative appeal in the Superior Court. That court rendered judgment dismissing the appeal.

I

At the trial court hearing, the plaintiffs attempted to introduce evidence as to the economic effect on their property of the defendant's failure to grant their excavation permit in accordance with their application. The plaintiffs offered this evidence to enable the trial court to make a determination, pursuant to General Statutes § 22a-43a,[2] as to whether the action of the defendant constituted a taking without just compensation. The trial court excluded this evidence, holding it to be inadmissible in a hearing governed by General Statutes § 4-183 (e). The plaintiffs took an exception to this ruling. The defendant maintains that the plaintiffs were precluded by our holding in *Florentine* v. *Darien,* 142 Conn. 415, 115 A.2d 328 (1955), from challenging the constitutionality of the defendant's action in an administrative appeal. We agree with the plaintiffs that the trial court should have admitted the evidence offered.

The plaintiffs in *Florentine* raised in their appeal to this court the question of whether by seeking a vari-

[2] "[General Statutes] Sec. 22a-43a. FINDINGS ON APPEAL. SETTING ASIDE OR MODIFYING ACTION. AUTHORITY TO PURCHASE LAND. (a) If upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking. In both instances the court shall remand the order to the inland wetland agency for action not inconsistent with its decision.

"(b) To carry out the purposes of sections 22a-38, 22a-40, 22a-42 to 22a-43a, inclusive, 22a-401 and 22a-403, the commissioner, district or municipality may at any time purchase land or an interest in land in fee simple or other acceptable title, or subject to acceptable restrictions or exceptions, and enter into covenants and agreements with landowners."

ance from the Darien board of appeals they would thereafter be foreclosed from challenging the constitutionality of the action of the zoning commission. We indicated our adherence to earlier decisions holding that "a party cannot seek the relief provided in an ordinance or statute and later in the same proceeding raise the question of its constitutionality." Id., 428. We declared instead that a party should proceed with the administrative remedies available to him, and thereafter, "challenge by direct attack in an independent proceeding the constitutionality of the regulation, or indeed, of the entire ordinance or law." Id., 430. If the view expressed in *Florentine* were controlling in the case at hand, therefore, the trial court would have correctly concluded that the plaintiffs were barred from challenging the constitutionality of the defendant's action in their administrative appeal. We conclude, however, that our holding in *Florentine* is not applicable to an appeal from an inland wetlands agency because the legislature has provided otherwise.

General Statutes § 22a-43a (a) provides in part that "[i]f upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking." For such an appeal this statute modifies the procedure prescribed in *Florentine* for mounting a constitutional challenge. It allows a party aggrieved by the action of an inland wetlands commission to raise a takings claim in an administrative appeal rather than in an independent proceeding. Accordingly, if an aggrieved party claims that the action appealed from constitutes a taking, and offers relevant evidence to support that claim, the trial court must hear the evidence to enable it to make an informed decision. In the case at hand the trial court refused to hear the plaintiffs' evidence on the economic impact

of the defendant's action and thus disabled itself from making the informed decision contemplated by § 22a-43a (a).

The defendant suggests that because General Statutes § 22a-43 states that the appeal from an inland wetlands commission "shall be in accordance with the provisions of section 4-183," the trial court properly excluded the plaintiffs' economic effect evidence. General Statutes § 4-183 (e) provides that if the court needs additional evidence to make its decision, "the court may order that the additional evidence be taken before the agency upon conditions determined by the court." The defendant maintains that this limitation on the presentation of evidence to the trial court serves to confine the court to the evidence in the record and to prevent the court from substituting its judgment for that of the agency.

We construe the provision of § 22a-43a (a) that "[i]f . . . the court *finds* that the action appealed from constitutes the equivalent of a taking without compensation," as contemplating that the trial court should decide the taking issue de novo in the light of all the evidence properly presented to it, including, but not limited to, the administrative record. (Emphasis added.) Since this court has indicated that an administrative agency is incompetent to decide certain constitutional issues; *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 344–45 n.6, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); it would make little sense for a trial court pursuant to § 4-183 (e) to remand a case to an inland wetlands commission for the purpose of hearing evidence relevant only to the issue of an unconstitutional taking, which that agency may not be empowered to resolve. Presumably the legislature was aware of this judicial limitation upon the authority of administrative agencies and, therefore, used statutory language indicating that the court should *find*

the fact-bound takings issue. In deciding that question, the trial court should have the benefit of hearing the testimony offered rather than receiving it second-hand through the medium of a transcript of a superfluous proceeding before the agency. It would, of course, have been virtually impossible for the plaintiffs to have introduced such evidence at the original hearing before the commission, because its action in granting the application only in part, which is the basis for the takings claim, could not have been known until after the hearing.

We conclude that the trial court erred in excluding the evidence offered by the plaintiffs as to the economic effect of the defendant's action and that the case must be remanded for further proceedings. Despite the necessity for a remand, we must consider the remaining issues. On some of these, if the plaintiffs should prevail, a different remand would be necessary.

## II

The claim that the plaintiffs were denied a fair hearing before the defendant commission is based upon the alleged bias or other improprieties on the part of four of its members.

The trial court found that John Katz, the chairman of the defendant commission, had taken an active interest in not only the plaintiffs' application but also their mining operation. Prior to the public hearings on the plaintiffs' application, Katz regularly visited the plaintiffs' mining site, followed trucks leaving the property, and interviewed a family for whom the plaintiffs had done construction work to ensure that the project conformed to the town's regulations. The trial court noted that the town's wetlands and zoning regulations do not confer upon Katz or any other commission member the authority to investigate the quality of an applicant's work on an unrelated site or to follow his trucks to and

from various places of business. The court found, however, that although Katz was "unquestionably a zealot," his actions did not demonstrate a conflict of interest or a predetermination of the plaintiffs' application.

The commission members discussed the plaintiffs' application after they had terminated the March 12, 1985 public hearing. During that discussion, two members of the commission, Eda Sherman and David Huntoon, expressed their concerns about the effect of a mining operation on certain wetlands to the east of a pond that the plaintiffs wanted to excavate.

Nelson Gelfman, a member of the defendant commission, disqualified himself from all phases of the proceedings involving the plaintiffs' application. At the January 8, 1985 hearing, however, Mary Gelfman, his wife, appeared on her own and her husband's behalf, spoke in opposition to the plaintiffs' application, and read into the record a letter that she had sent to the commission expressing their opposition to the proposed expansion.

The plaintiffs launch three different attacks on the fairness of the hearings on their application. These are: first, that the chairman of the commission, John Katz, was biased against them; second, that the comments made by Eda Sherman and David Huntoon demonstrated their predisposition against the plaintiffs' application; and third, that Mary Gelfman's statements at the January 8, 1985 hearing, on her own and her husband's behalf, violated statutory prohibitions. The plaintiffs failed to claim the disqualification of any of these commission members until after the decision upon their application.

A

Neutrality and impartiality of members are essential to the fair and proper operation of a planning and

zoning commission. *Lake Garda Improvement Assn.* v. *Town Plan & Zoning Commission,* 151 Conn. 476, 480, 199 A.2d 162 (1964). The evil to be avoided is " 'the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist in the exercise of zoning power.' " *Bossert Corporation* v. *Norwalk,* 157 Conn. 279, 284, 253 A.2d 39 (1968). We have held that bias "can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess." *Anderson* v. *Zoning Commission,* 157 Conn. 285, 290–91, 253 A.2d 16 (1968). The decision as to whether a particular interest is sufficient to disqualify, however, is necessarily a factual one and depends upon the circumstances of the particular case. *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority,* 192 Conn. 638, 648, 474 A.2d 752, cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984).

With respect to John Katz, there is no evidence that he had any financial interest in the outcome of the application or any disqualifying relationship with any opponent of the application. The only evidence of any personal interest on his part was his extraordinary effort to investigate circumstances related to the application before the hearing. The trial court concluded, after hearing evidence and assessing the credibility of witnesses, that Katz's actions did not constitute a conflict of interest or a predetermination. The plaintiffs have not demonstrated that this conclusion was erroneous as a matter of law. See Practice Book § 4185.

### B

The plaintiffs claim that the comments made by commission members Eda Sherman and David Huntoon

during the course of the hearing and the deliberations of the commission demonstrate their partiality and predisposition against the plaintiffs' application.

We have held that "[t]he law does not require that members of zoning commissions must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true." *Furtney* v. *Zoning Commission,* 159 Conn. 585, 594, 271 A.2d 319 (1970). As the court noted in *In re J. P. Linahan, Inc.,* 138 F.2d 650, 651–52 (2d Cir. 1943), "[t]he human mind . . . is no blank piece of paper. . . . Interests, points of view, preferences, are the essence of living. . . . An 'open mind,' in the sense of a mind containing no preconceptions whatever, would be a mind incapable of learning anything, [and] would be that of an utterly emotionless human being . . . ."

Local governments, therefore, would be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official. Such a policy "would not only discourage but might even prevent capable men and women from serving as members of the various zoning authorities. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism." *Anderson* v. *Zoning Commission,* supra, 291.

The decisive question, therefore, must be whether Sherman and Huntoon actually had made up their minds prior to the public hearing, regardless of any arguments that might have been advanced at the hearing. *Furtney* v. *Zoning Commission,* supra, 594. This issue involves a question of fact and the burden of proving the illegality was on the plaintiffs. Id., 594–95. The plaintiffs rely solely on excerpts from the transcripts

of the hearing to support their claim, as they did not call either Sherman or Huntoon as witnesses at the trial court hearing to develop their claim of partiality and predisposition,[3] nor did they even mention either of these commission members in their pretrial brief or posttrial brief.[4] The comments relied upon were all made during the hearings or in the discussion preceding the vote upon the application. They do not, therefore, indicate any predisposition that would have disqualified these members before the hearing. The comments made by Sherman and Huntoon were not of such a nature that the trial court was compelled to reach the conclusion that they were biased.

## C

The plaintiffs' more substantial claim is that Mary Gelfman's remarks at the January 8, 1985 public hearing, made on her own and her husband's behalf, violated the strictures of General Statutes § 22a-42 (c). This subsection, which pertains expressly to the disqualification of inland wetlands agency members, provides in part that "[n]o member or alternate member of such board or commission shall participate in the hearing or decision of such board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." The plaintiffs make no claim that Mary Gelfman was not entitled to speak on her own behalf at the hearing. Rather, they claim that by having his opinion voiced through his wife at the hearing, Nelson

---

[3] We note that General Statutes § 4-183 (f) provides in part: "In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court."

[4] David Huntoon was briefly mentioned in the last sentence of the plaintiffs' supplemental pretrial brief. Eda Sherman was not mentioned at all in this document. This court may take judicial notice of documents in the court file. See *Bialowans* v. *Minor,* 209 Conn. 212, 219 n.3, 550 A.2d 637 (1988).

Gelfman effectively sidestepped the prohibition in § 22a-42 (c) of "participating" in a hearing from which he was disqualified.

We recognize that § 22a-42 (c) is ambiguous as to whether a disqualified commission member's "appearance" or statements made through his wife and co-owner at a hearing constitute "participation" within the meaning of § 22a-42 (c). We conclude, however, that other statutes resolve this ambiguity.

We turn first to General Statutes § 8-11, which contains a nearly identical proscription against participation in zoning hearings by "interested" zoning commission members. Preceding that provision, § 8-11 prohibits any commission member from appearing for another party in any matter before the commission. This provision is significant, because it demonstrates that, in the zoning context, the legislature drew a distinction between participating in a hearing and appearing at a hearing. We note that § 22a-42 (c) contains no such proscription against appearing before an inland wetlands agency. Indeed, General Statutes § 22a-42a (c), which addresses public hearings on wetlands applications, states that "[a]t such hearing any person or persons may appear and be heard." This unqualified provision in § 22a-42a (c) compels us to conclude that Nelson Gelfman's remarks at the hearing, as voiced through his wife, did not constitute "participation," and therefore, did not violate the prohibition in § 22a-42 (c).

## III

The plaintiffs' proposed excavation plan involved expanding the mining operation within, and adjacent to, wetlands areas. The plaintiffs claim that the defendant had no authority to regulate mining activity in the nonwetlands areas. If the plaintiffs were to prevail on this issue, a remand to the commission would be neces-

sary for reconsideration of the application. We conclude, however, that the commission did not exceed its authority.

In *Aaron* v. *Conservation Commission,* 183 Conn. 532, 542, 441 A.2d 30 (1981), after a review of the inland wetlands statutes, we stated that "[a]n examination of the act reveals that one of its major considerations is the environmental impact of proposed activity on wetlands and water courses, which may, in some instances, come from outside the physical boundaries of a wetland or water course." We held, therefore, that activity that occurs in nonwetlands areas, but that affects wetlands areas, falls within the scope of regulated activity. Our holding in *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250–51, 470 A.2d 1214 (1984), is not to the contrary. In that case, we held that the Stamford environmental protection board properly excluded evidence relating to possible air and noise pollution generated by the proposed project, concerns that concededly are not related to inland wetlands. We held that "an inland wetland agency is limited to considering only environmental matters which *impact on* inland wetlands." (Emphasis added.) Id., 250. Thus, the defendant in this case acted within its authority in regulating mining and excavation in areas adjacent to the inland wetlands because there was evidence that these activities would adversely affect wetlands areas.

## IV

The defendant required the plaintiffs to post a performance bond to guarantee compliance with the conditions of the special permit. The defendant found authority for its action in § 10.01 of the Ridgefield inland wetlands and watercourse regulations, which expressly authorize the defendant to require a performance bond. The special permit condition read as follows:

"(4) A performance bond in the amount of one-hundred thousand ($100,000) dollars to guarantee compliance with these conditions shall be posted by the applicant prior to implementation of this permit. This bond shall remain in force for the duration of this permit, and may be claimed in part or whole if conditions of this permit are not met. This bond may be adjusted by decision of the Inland/Wetland Board upon its own motion or upon the applicants [sic] request." The plaintiffs claim that the defendant had no statutory authority to require a performance bond. Their claim is based upon the absence of a specific reference to performance bonds in the enabling statutes.

Before we discuss the merits of the plaintiffs' claim, we initially note that this court has long held that a planning and zoning commission may exercise only such powers as are expressly granted to the town by the legislature, or those powers that are necessary to enable it to discharge its duties and carry into effect the objects and purposes of its creation. *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 159, 479 A.2d 801 (1984). Our analysis, therefore, focuses on the language of the enabling statute and the policy that the inland wetlands legislation seeks to serve. See 2A J. Sutherland, Statutory Construction (4th Ed. Sands) §§ 56.01 and 56.02.

General Statutes § 22a-36 sets forth in great detail the purpose of our legislature in enacting this act, declaring that "[t]he inland wetlands and watercourses . . . are an indispensable and irreplaceable but fragile natural resource," and that their "preservation and protection . . . from . . . disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state." Section 22a-36 provides also that this legislation seeks "to protect the citizens of the state by making provisions for the protection, preservation, maintenance and

use of the inland wetlands and watercourses by minimizing their disturbance and pollution; [and by] maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority . . . . "

In order to carry out these legislative objectives, § 22a-42 (c) expressly authorizes communities to establish inland wetlands commissions and to adopt regulations. Section 22a-42 (c) states that "[a]ny municipality, acting through its legislative body, may authorize any board or commission . . . to promulgate such regulations, in conformity with the regulations promulgated by the commissioner pursuant to section 22a-39, as are necessary to protect the wetlands and watercourses within its territorial limits." As we stated in *Aaron* v. *Conservation Commission,* supra, 541, "[i]t is this broad statutory mandate authorizing regulations on both the state and local levels, with specific legislative findings and declaration of policy, that serves as the setting in which we evaluate the claims of the parties."

In this context, the issue before us becomes narrower. Specifically, we need decide only whether a local regulation that authorizes performance bonds is "necessary to protect the wetlands and watercourses." General Statutes § 22a-42 (c).

The plaintiffs suggest that a performance bond requirement is not "necessary," because such a measure is not indispensable to enable the defendant to discharge its duties. The word "necessary," however, is a term which encompasses many gradations of necessity, from mere convenience to that which is indispensable. *Indiana Broadcasting* v. *Star Stations,* 180 Ind. App. 207, 214, 388 N.E.2d 568 (1979). Indeed, this court has long approved of giving the word "necessary," where appropriate, a much more liberal meaning than indispensable. *Bryan* v. *Branford,* 50 Conn. 246, 253

(1882). We have held that its meaning varies depending upon the situation in which it is used and the goals to be achieved. *Hooker* v. *Goodwin,* 91 Conn. 463, 467, 99 A. 1059 (1917); see *Baldwin* v. *Tradesmens National Bank,* 147 Conn. 656, 661–62, 165 A.2d 331 (1960) ("necessary" does not restrict a surviving spouse's allowance to bare subsistence); *West Hartford* v. *Talcott,* 138 Conn. 82, 91, 82 A.2d 351 (1951) (in eminent domain context, "necessary" means only that taking is reasonably necessary); *Simmonds* v. *Holmes,* 61 Conn. 1, 9, 23 A. 702 (1891) (in statute allowing killing of dog if necessary to prevent destruction of property, "necessary" does not mean absolutely necessary).

As we have indicated, the legislature has articulated with great clarity its intent that local authorities assume an important role in the protection of this state's wetlands and watercourses. We believe, therefore, that the legislature intended that "necessary" should not be interpreted as meaning indispensable, but rather, as that which is reasonably designed to effectuate the stated purposes of the wetlands statutes. We conclude that the defendant, consistent with § 22a-42 (c), could properly require the plaintiffs to post a performance bond, because such a measure is reasonably designed to protect the town's wetlands and watercourses.

V

The remaining claims of the plaintiffs raise constitutional issues: (1) whether the inland wetlands act as applied to the plaintiffs constitutes a taking of their property; (2) whether the modifications imposed upon the application as granted substantially advance any legitimate state interest; and (3) whether the wetlands regulations adopted by the town of Ridgefield are so inadequate as to violate the due process clause of the fourteenth amendment to our federal constitution.

The exclusion of the evidence of the economic effect of the defendant's action upon the plaintiffs' property greatly limits the factual basis upon which the plaintiffs may presently rely in asserting their claim of a taking. Because this evidentiary ruling has necessitated a remand for further proceedings related to that claim so that the trial court may make findings related thereto, it would be inappropriate for this court to attempt to resolve the takings issue at this time on the limited record before us.[5] We are not inclined to decide such a constitutional issue in piecemeal fashion.

The plaintiffs' claim concerning the lack of any substantial state interest as a basis for ordering modifications in their application is intertwined with the takings issue upon which additional evidence is to be presented. We have indicated that under the closely related statutes regulating tidal wetlands, General Statutes §§ 22a-28 through 22a-35, the public interests are to be balanced against those of private landowners in determining whether a taking has occurred. *Brecciaroli* v. *Commissioner of Environmental Protection*, 168 Conn. 349, 354, 362 A.2d 948 (1975); see *Manor Development Corporation* v. *Conservation Commission*, 180 Conn. 692, 695, 433 A.2d 999 (1980). "Short of regulation which finally restricts the use of property for any reasonable purpose, resulting in a 'practical confiscation,' the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature

---

[5] Some portions of the plaintiffs' brief discussing this issue appear to attack the inland wetlands statute generally, but these are combined with the argument concerning the evidence ruling under the topic heading: "The Inland Wetlands Act, as applied to the plaintiffs' property by the defendant constitutes an unconstitutional taking of their property for a public purpose without just compensation, prohibited by the fifth amendment of the United States Constitution."

and degree of public harm to be prevented and to the alternatives available to the landowner." *Brecciaroli* v. *Commissioner of Environmental Protection,* supra, 356. At the further proceedings in the trial court that we have ordered, evidence may be admitted that is material to the taking issue both as it relates to the plaintiffs' financial detriment and as it relates to the advancement of the public interest.

The final constitutional issue, relating to the adequacy of the regulations in setting forth standards for a decision upon an application, constitutes the kind of general attack upon land use regulations that we have indicated should be the subject of a declaratory judgment action rather than an appeal from the denial of an application submitted pursuant to those regulations. *Florentine* v. *Darien,* supra, 428–30; *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 478, 196 A. 344 (1937); see *Russo* v. *Watertown,* 184 Conn. 30, 33–35, 441 A.2d 56 (1981). The validity of the regulations is a question in which many property owners, in addition to the plaintiffs, may have an interest, and an opportunity for such persons to intervene should be afforded before any such determination should be made. *National Transportation Co.* v. *Toquet,* supra, 481–86. Although the trial court did address the issue of the sufficiency of the standards contained in the regulations, holding them adequate, it should have dismissed that part of the plaintiffs' claim. Accordingly, we refrain from further consideration of that issue in this appeal.

There is error in part, the judgment is set aside and the case is remanded for further proceedings in respect to the takings issue.

In this opinion the other justices concurred.