[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This is an appeal from a decision of the defendant, Department of Public Utility Control ("DPUC") dated December 15, 1999 ordering that the plaintiff, The Southern New England Telephone Company ("TELCO") file a proposed enhanced provisioning services ("EPS") tariff with the DPUC and impose the same EPS nonrecurring charges on all of its customers.
Plaintiff TELCO is a public service company within the meaning of Conn. Gen. Stat. § 16-1(4) and (23), providing telephone service in Connecticut. TELCO was a party to the administrative proceeding appealed from. Defendant DPUC is a State agency empowered by Title 16 of the Connecticut General Statutes, §§ 16-1, et. seq., as well as the Telecommunications Act of 1996, 47 U.S.C. § 151, et. seq., to regulate the rates and operations of telecommunications companies such as TELCO. MCI WorldCom. ("MCIW) is a certified local exchange carrier ("CLEC") providing competitive telephone services to customers in Connecticut. MCIW was a party to the administrative proceeding and by the order of this court of March 13, 2000 joined the instant appeal as a defendant. CTC Communications Corporation ("CTC") is a CLEC, was a party to the administrative proceedings and on March 13, 2000 was granted by this court permission to join as a party defendant in this appeal.
In 1994 the Connecticut Legislature dramatically altered the telecommunications landscape in Connecticut by passing Public Act 94-83, §§ 16-247(a), et. seq. Section 16-247(a) states the purpose of the Act as follows: Affordable high quality telecommunications services are necessary and vital to the welfare of our society and to promoting economic development and expanding employment opportunities in the state. The goal of the state is to ensure the universal availability and accessability of high quality, affordable telecommunications services to all residents and businesses, to promote the development of effective competition as a means of providing customers with the widest possible choice of services and encourage shared use of existing facilities and cooperative development of new facilities, and to ensure that providers of telecommunications services in the state provide high quality customer service and high quality technical service. CT Page 113
Section 16-247(f) provide that the DPUC shall "regulate the provisions of telecommunications services in the state in a manner designed to foster competition and protect the public interest."
Since at least the effective date of the 1994 act, TELCO has provided various CLECs, such as the parties to this appeal access to portions of its telecommunication system. In addition to basic services, TELCO offers to CLECs four distinct enhanced provisioning services ("EPS"), as follows: Pre-Due Date Service Confirmation that guarantees that the wholesale products or services CLECs have ordered from TELCO will be available on a specifically requested due date; Expedite Service that assures the installation of certain wholesale products and services on an earlier date than TELCO's standard due date; Coordinated Cut Off Service that allows CLECs to schedule cut off services at a specified time, rather than during TELCO's normally scheduled hours; and Out of Hours Service that allows CLECs to request that TELCO provide services outside of the regular hours i.e. in the evening, early mornings, on Saturday, Sunday and holidays.
TELCO either does not charge its own retail customers for the EPS or charges, them a nominal amount on a time and material basis for such services. However, TELCO does charge retail CLECs — resellers that do not own facilities, wires, switches or physical networks, but lease those facilities from an incumbent local exchange carrier such as TELCO — the following amounts: To confirm the due date for service installation $489.53; to expedite a service request $658.73; for coordinated cutoff $394.84 and for out of hour services $378.00. CLECs routinely assess these charges to their retail customers requesting the enhanced service.
MCIW filed a petition with the DPUC for a declaratory ruling that the DPUC assert jurisdiction over the nonrecurring charges assessed by TELCO on MCIW subsidiaries for EPS. MCIW claimed that the EPS services are tied to the effective provisioning of telecommunications services and necessary for CLECs to compete. MCIW also claimed that the nonrecurring charges for EPS must be tariffed and approved by DPUC because they fall within the parameters of services contemplated in Section 16-247b(b) of the Connecticut General Statutes. Finally, MCIW contended that the charges filed against CLECs were excessive, discriminatory and should be suspended pending a full review of the tariff.
In its decision of December 15, 1999 the DPUC determined that the EPS herein referred to "are not essential services but of a premium nature." The decision provided:
While the department believes that the TELCO's EPS are CT Page 114 subject to the statutory requirement outlined in Connecticut General Statute Section 16-247(b), they are not critical to the provision of telecommunication services. Rather, EPS are a set of services that are used to enhance the provisioning of the TELCO's wholesale local exchange service offerings. The department finds these services to be of a premium nature, and therefore, not essential to the CLECs to provision their respective services.
Thus while not premising its jurisdiction upon Section 16-247b(b), the DPUC did find it had jurisdiction over the petition pursuant to §16-1(4); 16-1(23); 16-297b(a), 16-247f(a) and Sections 251 and 252 of the Federal Telecommunications Act of 1996, 97 U.S.C. § 151, et. seq. TELCO is a public service company as defined by § 16-1(4) and a telephone company as defined by § 16-1(23). Section 16-247(b)(a) gives the DPUC authority to require that services and functions of telecommunication companies be offered at rates and on conditions that do not unreasonably discriminate against customers. Moreover, Section 16-247(f)(a) allows for the DPUC to regulate the provisioning of telecommunication services so as to foster competition and protect the public interest. Sections 251 and 252 of the Telecommunications Act provides the DPUC with the authority to ensure that all connection and network element services are just and reasonable. Finally, TELCO has proposed to file EPS as Customer Service Arrangements ("CSA"). Consequently the individual functions and features of EPS and their respective costs must be investigated by the DPUC and ultimately tariffed.
Thus the DPUC found it did have jurisdiction and further found that TELCO's offering of EPS-like services to its own retail customers at no charge or on a time and materials basis is discriminatory when compared to the EPS offered to CLECs. Its order was that the TELCO file a proposed EPS tariff for these EPS and impose the same EPS nonrecurring charges on its own retail customers as on other CLECs.
TELCO appeals the DPUC's decision on the following grounds:
1. DPUC exceeded its statutory authority by asserting jurisdiction over and setting rates for EPS pursuant to Section 16-247b(h) after it explicitly found those EPS were not necessary for the provision of telecommunication services.
2. DPUC erroneously acted pursuant to Section 16-247b(a) when it did not follow the procedure and make the findings required by that statute.
 1. CT Page 115
Section 16-247b(b) provides:
 Each telephone company shall provide reasonable nondiscriminatory access to all equipment, facilities, and services necessary to provide telecommunications services to customers. The department shall determine the rates that a telephone company charges for equipment, facilities and services which are necessary for the provision of telecommunication services. (underlining added)
Plaintiff TELCO argues the statute gives DPUC the power only to set rates for services that are "necessary for the provision of telecommunication services." Since the DPUC has found TELCO's EPS are "not critical to the provision of telecommunication services and, therefore not necessary, DPUC has exceeded its statutory authority by setting rates pursuant to Section 16-247b(b).
Defendant CTC points out that the word "necessary" "is a term which encompasses many gradations of necessity from mere inconvenience to that which is indispensable." Cioffoletti v. Planning Zoning Commission,209 Conn. 544, 560 (1989). The case further notes that "necessary" is given in our law a much more liberal meaning than indispensable and should be interpreted "as that which is reasonably designed to effectuate the stated purpose of the . . . statutes." Id. 561. CTS argues that while DPUC found EPS to be "not critical" or "not essential" to the provision of telecommunication services, it did not find that such services were not "necessary," so the DPUC did have jurisdiction under Section16-247(b)(b).
The court finds this hairsplitting to be Talmudic. DPUC clearly meant its terms "critical" and "indispensable" to be equivalent to "necessary" because it carefully did not assert jurisdiction in this matter on the basis of Section 16-247b(b)
However, TELCO's assertion that DPUC exceeded its statutory authority by setting rates for these EPS services is incorrect for the simple reason that in this proceeding the DPUC has not set the rates for EPS. Rather, DPUC found TELCO discriminated against CLECs by charging them for these premium services at a higher rate than it charged its own customers, and, consequently, it had authority under § 16-474b(a) to prohibit that practice. Its decision states:
Conn. Gen. Stat. 16-247b(a) states that the functions of a telecommunications company that are CT Page 116 used to provide telecommunications services shall be offered under tariff rates, terms and conditions that do not unreasonably discriminate among actual and potential users and actual and potential providers of such services. Therefore, the Telco's retail customers cannot be treated any differently than those of CLECs. Accordingly, the Telco's retail customers must be subject to the same types of charges as the CLECs.
The conclusion in DPUC's decision plainly states:
 "These EPS services are not essential for the provisioning of telecommunication services and therefore may contain markups that exceed those for essential services. The TELCO's practice of not charging its own customers for EPS or charging only labor and material incurred in providing additional services is discriminatory and therefore, the [sic] TELCO should submit revised retail tariffs to reflect these feature charges should it continue offering these features to its subscribers."
Thus the court concludes that DPUC did not exceed its statutory authority under § 16-474b(b) but rather acted within its statutory authority under § 16-474b(a) to prohibit TELCO from discriminating in the rates for EPS it charges its own retail customers and CLECs and their customers. Consequently, TELCO's first ground of appeal is without merit.
 2.
Section 16-247(b)(a) provides:
On petition or its own motion, the department shall initiate a proceeding to unbundle a telephone company's network, services and functions that are used to provide telecommunications services and which the department determines, after notice and hearing, are in the public interest, are consistent with federal law and are technically feasible of being tariffed and offered separately or in combinations. Any telecommunications services, functions and unbundled network elements and any combination thereof shall be offered under tariff at rates terms and conditions that do not unreasonably discriminate among actual and potential users and actual and potential CT Page 117 providers of such local network services.
As its second ground of appeal plaintiff TELCO argues that DPUC cannot assert jurisdiction over the EPS under § 16-247b(a) because it has failed to comply with the provisions of that statute. Specifically, it failed to give notice and provide a hearing of a proceeding, to unbundle TELCO's network, services and functions, thus denying TELCO due process rights (Connecticut Fund for the Environment v. Stamford, 192 Conn. 247,249 (1984) it failed to determine that unbundling EPS are "in the public interest," "consistent with federal law," and "technically feasible of being tariffed and offered separately or in combination;" and no substantial evidence in the record would support such findings. In short, TELCO argues that because there is no finding that EPS are unbundled network elements (UNEs), DPUC has no jurisdiction under §16-247b(a). This argument is also without merit.
It is true DPUC never treated the MCIW petition as an unbundling proceeding nor initiated such a proceeding on its own motion. Nor did.the DPUC find that TELCO's EPS were UNEs. But it interpreted § 16-247b(a) as not requiring it to do so.
This statutory interpretation is correct linguistically and as a matter of common sense. The first sentence of the statute deals with a proceeding to unbundle a telephone company's network, services and functions that are determined to be in the public interest, consistent with federal law and technically feasible of being tariffed and offered separately or in combination. The second sentence of the statute prohibits discrimination in the offering of "[a]ny" of these services. It does not require that "services" and "functions" be unbundled as it does "network elements." The second sentence read, "Any telecommunicationsservices, functions and unbundled network elements . . . shall be offered under tariff at rates, terms and conditions that do not unreasonably discriminate among actual and potential users and actual and potential providers of such local network services." (underlining added).
The DPUC found EPS to be "services" or "function". Its decision states, ". . . they are services, nonetheless, and subject to the Department's jurisdiction." . . ."Conn. Gen. Stat. § 16-247b(c) states that functions of a telecommunications company that are used to provide telecommunications service shall be offered under tariff rates, terms and conditions that do not unreasonably discriminate among actual and potential users and actual and potential providers of such services."
Clearly, the first sentence of § 16-247b(a) relates to an unbundling proceeding. The second sentence relates to discriminatory CT Page 118 practices. "Services" and "functions" of a telecommunications company in the second sentence need not be subject to the unbundling proceeding of the first sentence. By finding EPS to be services and functions of TELCO (a finding supported by substantial evidence) it had the jurisdiction under § 16-247b(a) to declare "TELCO's offering of EPS-like service to its own retail customers at no charge or on a time and materials basis is discriminatory when compared to the EPS offered to CLECs."
Moreover, the first sentence of the statute is designed for situations when an incumbent local exchange carrier like TELCO is unwilling to offer a particular aspect of its network, services or functions in an unbundled fashion to CLECs. The statute provides a mechanism for determining whether or not TELCO should be required to unbundle the requested service and offer it separately. But when TELCO is already voluntarily offering the four EPS that are the subject of this case to CLECs at prices set by TELCO, there is no need, nor does it make sense to go through an administrative process to unbundle those same services. Also, and most significantly in this appeal, once such services are made available to CLECs, the statute requires TELCO to offer them at rates, terms and conditions that do not unreasonably discriminate among the users.
Finally, § 16-247f(a) grants DPUC the authority over TELCO to prohibit discriminatory practices as to EPS by providing it "shall regulate the provisions of telecommunication services in the state in a manner to foster competition and protect the public interest."
The Federal Telecommunication Act also mandates nondiscrimination in all telecommunication services. 47 U.S.C. § 251(c)(3) provides that telecommunications carriers have:
 The duty to provide, to any requesting telecommunications carrier for the provision of a telecommunications service, nondiscriminatory access to network elements on an unbundled basis at any technically feasible point on rates, terms and conditions that are just, reasonable and nondiscriminatory in accordance with. . . the requirements of this section and section 252 of this title.
47 U.S.C. § 252(d)(1) provides that state rates for telecommunication services be nondiscriminatory.
Thus the court finds that DPUC asserted its jurisdiction over EPS properly under § 16-247b(a) CT Page 119
TELCO's two grounds for appeal are being without merit, this appeal is dismissed.
ROBERT SATTER State Judge Referee