## ANN FAY BARRY *v.* HISTORIC DISTRICT COMMISSION OF THE BOROUGH OF LITCHFIELD

Superior Court, Judicial District of Litchfield
File No. CV-04-0092641S

Memorandum filed January 11, 2006

*Cramer & Anderson*, for the plaintiff.

*Law Offices of James Stedronsky*, for the defendant.

PICKARD, J. The plaintiff, Ann Fay Barry, has brought this appeal from the denial by the defendant, the borough of Litchfield historic district commission (commission), of an application for a certificate of appropriateness. For the reasons subsequently given, the appeal must be sustained.

## I

## AGGRIEVEMENT

General Statutes § 7-147i provides in relevant part: "Any person or persons severally or jointly aggrieved by any decision of the historic district commission . . . may . . . take an appeal to the superior court for the judicial district in which such municipality is located . . . . Procedure upon such appeal shall be the same as that defined in section 8-8." The plaintiff is the owner of property at 34 South Street in Litchfield, which is the subject of this application and appeal. "The fact that the [commission's] decision resulted in the denial to the plaintiff of the ability to use [the] property as proposed establishes" that the plaintiff is aggrieved by the commission's decision. *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 530, 525 A.2d 940 (1987).

## II

## FACTS

The plaintiff's property is located within the borough of Litchfield historic district. It consists of a single-family house built in or about 1805. In about 1830, an addition was constructed on the south side of the building where Origen Seymour conducted a law practice and taught students from the Tapping Reeve Law School. Seymour ultimately became speaker of the state

House of Representatives, ran for governor and became chief justice of the Supreme Court of Errors. The addition was accessed through a separate door facing South Street, which provided privacy for Chief Justice Seymour's students and clients. At some time prior to 1852, a stylish portico was added to the door, perhaps to reflect Chief Justice Seymour's rise in the social order of the day. This portico was identical to one that adorned a door on the front of a neighboring house belonging to Chief Justice Seymour's sister.

The commission is charged with enforcing the borough of Litchfield historic district's ordinance and regulations in accordance with General Statutes §§ 7-147a to 7-147k. On December 18, 2003, the commission received the plaintiff's application for a certificate of appropriateness to remove the exterior door and portico and replace them with a window. The commission held a public hearing and denied the application.

### III

### DISCUSSION

### A

### Notice of Continuance of Public Hearing

The plaintiff's first claim is that the commission was deprived of jurisdiction to act on her application because of its failure to give notice that the public hearing scheduled for February 17, 2004, had been rescheduled for February 19, 2004. The hearing had originally commenced on January 22, 2004. After hearing testimony on that date, the hearing was continued to February 5, 2004. Likewise, on February 5, 2004, the commission heard more testimony and then announced that the hearing was being continued to February 17, 2004. Sometime thereafter, the chairperson decided to continue the hearing for February 17 to 19, 2004. No notice was published of this continuance, nor was any

notice posted at the hearing room. Sometime prior to February 17, 2004, however, the recording clerk of the commission posted a notice with the Litchfield town clerk stating that the special meeting of the commission to be held on February 16, 2004 "has been canceled. All matters on the agenda have been rescheduled to the Regular Meeting scheduled for February 19, 2004."

The record contains a second notice generated by the commission stating that the special meeting of the commission to be held on February 17, 2004, has been canceled and that all matters on the agenda have been rescheduled for February 19, 2004. This notice was neither filed with the Litchfield town clerk nor was it published. The agenda for the February 19, 2004 meeting was filed with the Litchfield town clerk on February 17, 2004. This agenda stated that a continuation of the plaintiff's application would be heard at 6 p.m. on February 19, 2004.

The statutory notice required for public hearings of an historic district commission is as follows: "Notice of the time and place of such hearing shall be given by publication in the form of a legal advertisement appearing in a newspaper having a substantial circulation in the municipality not more than fifteen days nor less than five days before such hearing." General Statutes § 7-147e (a). There is no dispute that the notice for the commencement of the hearing on January 22, 2004, was in conformity with the statute. The continuation of the hearing to February 5, 2004, was announced verbally at the end of the session on January 22, 2004. Further, the continuation of the hearing to February 17, 2004, was announced verbally at the end of the session on February 5, 2004. The plaintiff does not claim that there was anything defective about the notices for these continuances.

The plaintiff's argument is purely statutory; she does not make a due process claim. She argues that the

commission was required by § 7-147e (a) to republish newspaper notice of the continuance from February 17, 2004, to February 19, 2004. The notice requirement in that subsection, which is substantially the same as the notice requirements found in other land use statutes, merely states that notice of the public hearing must be published. The appellate courts have not addressed whether a statutory requirement of this sort requires more than published notice of the commencement of the hearing. There is, however, some Superior Court authority for the proposition that continuances of the initial day of the public hearing do not require further publication. See *Carlson* v. *Fire District Committee*, Superior Court, judicial district of Waterbury, Docket No. CV-99-0154545 (February 5, 2002) (31 Conn. L. Rptr. 355) (*Moraghan, J.*). In the absence of a specific requirement for additional publication, it is found that the lack of additional publication did not violate § 7-147e (a).

B

Notice of the Decision

Section 7-147e (b) provides in relevant part: "Within not more than sixty-five days after the filing of an application as required by section 7-147d, the commission shall pass upon [the] application and shall give written notice of its decision to the applicant. . . . Failure of the commission to act within said sixty-five days shall constitute approval and no other evidence of approval shall be needed." The plaintiff filed her application on December 18, 2003. The commission voted to deny the application on February 19, 2004, the sixty-third day after December 18, 2003. Notice of the denial was mailed to the plaintiff on February 24, 2004, the sixty-eighth day after December 18, 2003. The plaintiff claims that this constituted failure to mail notice within sixty-

five days of the approval of the application. This argument must be rejected.

## C

### Commissioner Glenn Hillman's Participation

The plaintiff claims that commissioner Glenn Hillman's testimony at the public hearing violated the bylaws of the commission, the plaintiff's right to fundamental fairness and due process and invalidates the commission's actions. Hillman recused himself and then proceeded to testify against the application.

Article VIII of the bylaws of the commission provides as follows: "No member of the Commission shall participate in any hearing or decision on any matter in which he or she has a personal interest, financial or otherwise." The plaintiff first argues that Hillman had an interest in the matter and participated in the hearing by testifying against the application. The record does not indicate why Hillman recused himself. It does not appear that it was because of any financial interest or because he was an adjoining property owner. The only conclusion to be drawn is that he made up his mind about the application and did not feel that he could be impartial. The issue then becomes whether he participated in the hearing by testifying against the application.

There are no precedents that fit this situation exactly. The commission refers to *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 557, 552 A.2d 796 (1989). In that case, the plaintiff filed an application to extend a sand and gravel operation that was located next to wetlands (the commission was also acting as the town's inland wetlands commission). Commissioner Nelson Gelfman disqualified himself from the proceedings. At the hearing, however, his wife appeared and spoke against the application on both her own and her husband's behalf. She read into the record a letter

that she said expressed the opposition of both her and her husband. The application was denied and, on appeal, the plaintiff argued that the testimony of Gelfman's wife violated General Statutes § 22a-42 (c), which provides in relevant part that no member of an inland wetlands agency "shall participate in the hearing or decision of such board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. . . ." Our Supreme Court contrasted the language of General Statutes § 8-11, which has similar language on participation but also prohibits any commission member from appearing for another party in any matter before the commission. Section 22a-42 (c) does not contain a specific prohibition against appearing before the commission. On the basis of the differences in language, the Supreme Court concluded that "Gelfman's remarks at the hearing, as voiced through his wife, did not constitute 'participation,' and, therefore, did not violate the prohibition in § 22a-42 (c)." *Cioffoletti* v. *Planning & Zoning Commission,* supra, 209 Conn. 557.

In opposition to that position, the plaintiff refers to a more recent Appellate Court case, *Nazarko* v. *Conservation Commission,* 50 Conn. App. 548, 717 A.2d 850, cert. denied, 247 Conn. 940, 723 A.2d 318 (1998). In that case, an applicant obtained inland wetlands approval to operate a skeet shooting range on his property. The plaintiff neighbor appealed on the ground that the first selectman, an ex officio member of the commission, should have disqualified himself from the proceedings. Like *Cioffoletti,* the present case is governed by § 22a-42 (c). It appears that the first selectman held membership in the club and that his participation in the matter consisted of sitting at the commission's table and of being asked two questions by witnesses and one by the chairperson. He did not participate in the voting. The

Appellate Court upheld the trial court's decision sustaining the appeal. Id., 553. The court found that the first selectman should not have participated in the process because "[t]he appearance of impropriety created by a public official's participation in a matter in which he has a pecuniary or personal interest is sufficient to require disqualification. . . . This prophylactic rule serves the salutary purposes of promoting public confidence in the fairness of the decision-making process and preventing the public official from placing himself in a position where he might be tempted to breach the public trust bestowed upon him. . . . The test is not whether the personal interest does conflict but whether it reasonably might conflict. . . . A personal interest, we have said, is a personal bias or prejudice which imperils the openmindedness and sense of fairness which a zoning official in our state is required to possess. . . . Public policy requires that members of public boards cannot be permitted to place themselves in a position in which personal interest may conflict with public duty." (Citations omitted; internal quotation marks omitted.) Id., 552–53.

Neither *Cioffoletti* nor *Nazarko* is determinative. First, both cases involve inland wetlands commissions and apply the provisions of § 22a-42 (c). There are no similar statutory prohibitions regarding historic district commissions. The commission argues that article VIII of the bylaws of the commission should not be interpreted to prohibit the appearance of a disqualified commissioner at a public hearing. The language of § 22a-42 (c) is similar to the language of article VIII of the bylaws of the commission in that they both use the word "participate." On the basis of this similarity, the court concludes that they mean the same thing. Further, on the basis of *Cioffoletti*, the court must reluctantly conclude that Hillman did not "participate" in the hearing, as that word is used in article VIII of the bylaws of the commission.

There is, however, another ground on which the plaintiff attacks Hillman's participation. The plaintiff argues that she was denied fundamental fairness as a result of Hillman's testimony at the hearing. The court agrees.

Hillman actually appeared as a witness at the public hearing and testified at great length, purportedly as an expert in historic restoration. His testimony consumes approximately ten single spaced pages in the transcript. He made a physical inspection of the property and offered testimony that was at variance with the plaintiff's position. He offered photographs and opinions that were in direct opposition to the plaintiff's experts. He questioned the plaintiff's expert from the audience. He appealed directly to the commission on whether the plaintiff's expert was correct that there was no lancet pattern on columns of the portico: "Well, I respectfully ask the commission in their deliberations to look at these photographs very carefully to see if there is one there or not." He cited the Connecticut statutes and gave the commission legal advice on the obligations and rights of the commission.

Hillman summed up his presentation as follows: "Each case must be looked at individually as to how a proposed alteration will [affect] the district materially as a whole, how it will [affect] its immediate neighborhood, and how it may impact important historic and architecturally important material on the structure itself. The state statutes and the [commission] regulations clearly hand you this mandate in your deliberations. I believe I have shown the replacement of the portico and the door with a window proposed by [the plaintiff] is inappropriate. First, by the fact that the window creates an inappropriate incongruity on the addition of the facade that is inconsistent with other structures' detailing of the portico's post. [These] are of significant architectural importance to the town and to the structure itself. It speaks to the particular history

of the structure and its moment in time. Finally, because of the door's integral relation to the portico, its possible ties to a known builder and its relation to the neighboring structure, it is historically and architecturally significant to the borough. Furthermore, it is a physical historical document of its owner's prominence and a reminder and representative element of the interrelationships between two of Litchfield's most prominent nineteenth century families. Therefore, the application of [the plaintiff] of 34 South Street for the removal of the door and portico should and must be denied." The commission ultimately adopted Hillman's opinions.

The decision as to whether the hearing in the present case afforded fundamental fairness is a factual one and depends on the particular circumstances. *Nazarko* v. *Conservation Commission*, supra, 50 Conn. App. 553. The court's reading of Hillman's testimony leads it to conclude that it would have been very difficult for the other commissioners not to have been unfairly influenced by his testimony. It is unlikely that the other commissioners were able to give the testimony of the plaintiff's expert witness the same consideration that they gave to the testimony of Hillman, their fellow commissioner. It is not simply that Hillman opposed the application. It is that he placed his professional reputation at stake in fervent opposition to it. It would have been very uncomfortable for the other commissioners to have approved the application and then to continue to work with Hillman as members of the same deliberative body.

Judicial approval of the highly unusual approach taken by Hillman would set a precedent that would undermine public confidence in the impartiality of local historic district commissions. What kind of message would it send to future applicants if a commissioner, for any reason at all, could disqualify himself from a

proceeding and walk around to the other side of the table to testify as an expert witness in emphatic opposition to the application, and then walk back around to the other side of the table and proceed to hear the next application with his or her colleagues? If Hillman's behavior in the present case is approved by this court, what would prevent a future applicant from hiring Hillman to act as an expert witness on his behalf? The appearance of undue influence is a significant consideration. Cf. *Thorne* v. *Zoning Commission*, 178 Conn. 198, 203–205, 423 A.2d 861 (1979). Although the factual situation is somewhat different, the Appellate Court's language previously quoted from *Nazarko* is relevant to the issue of the appearance of impropriety here.

For these reasons, the plaintiff was denied fundamental fairness by Hillman's testimony at the public hearing. The plaintiff is entitled to a fair hearing without the unfair influence of Hillman's testimony.

### D

### Other Issues

The plaintiff raised other issues that need not be addressed. The plaintiff claims that the commission's decision exceeded the authority granted by the statute and ordinance by attempting to protect more than incongruities with the historic or architectural aspects of the district. General Statutes § 7-147f (b) provides in relevant part that "the historic district commission shall act only for the purpose of controlling the erection or alteration of buildings, structures or parking which are incongruous with the historic or architectural aspects of the district. . . ." The Litchfield ordinance establishing the commission has identical language. This is an interesting issue that the parties have briefed. In light of the outcome of the issue regarding Hillman, however, the court has decided not to try to issue what

would essentially be an advisory opinion on the meaning of § 7-147f (b). The same is true with the other issues raised by the plaintiff.

## IV

## CONCLUSION

The plaintiff was denied fundamental fairness as a result of Hillman's extensive testimony at the public hearing. Her appeal is, therefore, sustained.